# MONONGAHELA RAILWAY COMPANY *vs.* BENJAMIN H. READ.

*Carriers—Action for Freight—Prayers—Interstate Commerce—Departure from Published Tariff—Invalid Agreement.*

In an action by a carrier for freight on a shipment carried by it, a prayer submitted by plaintiff was erroneous which failed to require the jury to find that the freight had not been paid, and assumed such non-payment.    pp. 148, 149

A carrier engaged in interstate commerce cannot legally waive the requirement of prepayment of freight, as stated in its published tariffs, the Interstate Commerce Act, sec. 6, subsec. 7, expressly providing that no carrier shall refund or remit in any manner or by any device any portion of the rates, fares and charges specified, nor extend to any person privileges or facilities in transportation, except such as are specified in such tariffs.    pp. 150, 151

An agreement by the carrier that money collected for liquidation of freight charges on one person's shipment shall be applied in payment for freight on another's shipment, with the expectation of reimbursement from freight which might be collected on the latter shipment when delivered, is invalid under the Interstate Commerce Act.    pp. 150, 151

In an action by a carrier for freight, a prayer which makes the plaintiff's right to recover depend upon compliance with an agreement as to payment of freight which plaintiff, under the Interstate Commerce Act, had no right to make, was improperly granted.    p. 151

The carrier cannot be estopped from questioning the validity, under the Interstate Commerce Act, of an agreement by which it waived compliance with its published tariffs requiring prepayment of freight.    p. 151

Where a practice, adopted by a carrier, involving payment of freight on a certain class of shipment after delivery, was

invalid under the Interstate Commerce Act, as contravening the published tariff, it was not incumbent upon the carrier to notify a shipper of its abandonment of the practice.     p. 152

The original consignee of a shipment of coal having surrendered to a coal exchange all its right, title and interest in the shipment, such original consignee was not entitled to a notice of the delivery of the shipment.                    p. 153

*Decided January 15th, 1925.*

Appeal from the Court of Common Pleas of Baltimore City (AMBLER, J.).

Action by the Monongahela Railway Company against Benjamin H. Read, trading as Lynah & Read, Inc. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Ralph Robinson,* for the appellant.

*Thomas F. Cadwalader,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

In June, 1920, eleven cars of coal were consigned by the Poland Coal Company for shipment over the lines of the Monongahela Railway Company, and the Pennsylvania Railway Company, from Brownsville, Pennsylvania, to the Tidewater Coal Exchange, Baltimore, Maryland (hereinafter called the Exchange), for the account of Lynah & Read, Inc., and by its authority, under a tariff which called for the prepayment of transportation charges. The transportation charges were not prepaid, but were charged to the account of Lynah & Read, Inc., in accordance with a credit arrangement apparently begun by the Pennsylvania Railroad Company while it was under federal control and continued after that control ceased. Demand was subsequently made upon

Lynah & Read, Inc., for the payment of these charges, and upon its refusal to make such payment the appellant brought this suit to recover them. The case was tried before a jury in the Court of Common Pleas of Baltimore City, and, the verdict and judgment being for the defendant, the plaintiff has taken this appeal.

The Monongahela Railway Company operates a railroad between Fairmount, West Virginia, and Brownsville, Pennsylvania, and with the Pennsylvania Railroad forms a continuous line from Brownsville to Baltimore. It is owned by the Pennsylvania Railroad Company and the Erie and Pittsburgh Railroad Company, each owning one-half of its stock and securities.

Lynah & Read, Inc., was until October, 1920, a corporation engaged in buying and selling coal. In that month its business was acquired by Benjamin H. Read, who took over all of its assets, assumed all of its liabilities, and thenceforth traded under its name.

The Tidewater Coal Exchange, Inc., was an organization of consignees and shippers of coal formed in 1920 for the purpose of facilitating the trans-shipment of coal brought to Baltimore by rail to the vessels of water-bound carriers. Its plan of operation roundly stated was this: As soon as coal was shipped and was moving for the account of a member of the Exchange, he would notify it of that fact, and credit would be given him on its books for the shipment. That credit in practice entitled him to receive coal equal in quantity to the shipment consigned to him from other coal in the control of the Exchange, and credit was even given for coal which had never been shipped at all, on the faith of the promise of the member obtaining the credit that it would be available when called for. So that coal shipped to the Exchange for the account of a member did not actually reach him at all, but in lieu of that coal he received a like quantity from a pool formed by all the shipments of coal of that grade.

The "credit" thus given was conditional, and became final and complete when the coal actually arrived, but in the mean-

time the "credit" could be bought or sold, and the vendee or holder could have the quantity of coal represented by it delivered at any time when there was sufficient coal in the pool to permit such delivery. The freight on these shipments prior to June 26th, 1920, was collected by the terminal carrier in all cases, and while that system was in force, the freight due by the consignee receiving a "credit" on the shipment consigned to him was collected by the terminal carrier upon the delivery of the coal represented by the "credit," and the freight on the coal actually consigned to him was paid upon delivery by the holder of some future credit, when and as it arrived and was delivered. That system of collecting freight was discontinued by the railroad companies after June 25th, 1920, and consequently no freight was collected on coal represented by "credits" which had been shipped but had not arrived at its destination on or prior to that day. As a result of the abrupt discontinuance of that practice some confusion resulted, of which this case is an apt illustration.

Lynah & Read, Inc., as soon as the eleven cars of coal referred to above had been shipped, obtained a credit from the Exchange for the quantity of coal in the shipment and immediately sold it to J. A. Dinning, agent for the Keystone Coal and Coke Company, "f. o. b. mines freight to be paid by Dinning." Thereupon Dinning paid the freight on the coal represented by the credit, which was greater than the amount due on the actual shipment consigned by the Poland Coal Company for the account of Lynah & Read, Inc., but the freight due on the latter shipment, which arrived after June 25th, 1920, was actually not collected and was not paid by any one. So that Lynah & Read, Inc., although it had in effect paid the equivalent of that freight bill in selling the coal to Dinning, f. o. b. the mines, was called upon by the Monongahela Railway Company to pay it again, because while it had paid the freight bill on the coal delivered on the "credit" given it on the basis of that shipment, it had not paid the appellant's bill, which it undertook to pay when it ordered the eleven cars shipped over the appellant's road.

Eight of the nine exceptions found in the evidence refer to rulings of the lower court on questions of evidence. These exceptions were not pressed in this Court and need not therefore be considered.

The plaintiff offered two prayers and the defendant five. The court refused the plaintiff's second prayer and granted the defendant's first and fourth prayers, and these rulings are the subject of the ninth exception.

By the plaintiff's first prayer the jury were told that if the defendant's coal was loaded into the plaintiff's cars and by the plaintiff delivered to the connecting and terminal carrier at the West Brownsville scale and there weighed and consigned to the Tidewater Coal Exchange at Canton, Baltimore, Maryland, for account of Lynah & Read, Inc., and that the consignment accorded with the directions given by the shipper, and that Lynah & Read, Inc., were members of the said Exchange, and that under its rules it was not responsible to the carriers for freight, but that each member was required to adjust his own freight accounts with carriers shipping coal to the Exchange for his account, and that said coal was transported to destination and delivered to the Exchange for account of the defendant, that then the defendant was liable for the freight on such shipment.

By the plaintiff's second prayer it sought to have the jury instructed that if they found the facts set out in the first prayer, and that after the delivery to the Exchange the coal was dumped into vessels by the terminal carrier upon the order of the Exchange, the plaintiff was entitled to recover, even though the coal was not received by the defendant, and even though the terminal carrier did not collect the freight due thereon. Technically that prayer was bad and there was no error in rejecting it, because it assumed as a fact that the freight due on the shipment had not been paid. It is true it left the question of whether the terminal carrier had collected the freight to the jury, but it should also have required the jury to find that the freight had not been paid at all either to the terminal or initial carrier. To have justified a recov-

ery the jury must have found that the freight had been earned and was unpaid, and the legal proposition submitted by the prayer was incomplete because it omitted one of those elements.

By the defendant's first prayer the jury were instructed that if they found that the appellant, having no scale of its own, employed the scales of the Pennsylvania Railroad Company, at West Brownsville, and authorized that company after weighing the eleven cars of coal to bill them and forward them over its lines to Canton piers, Maryland, and authorized it to make delivery there, that then the appellant was bound by the actions of the Pennsylvania Railroad Company in forwarding and delivering the cars, and that if they further found that the scales agent at West Brownsville "was authorized" to let the cars come forward without the prepayment of freight thereon, owing to the fact that Lynah & Read, Inc., was on the credit list in his possession by an order of the Pennsylvania Railroad Company, given "upon the understanding with said Lynah & Read, Inc., that so long as the said Pennsylvania Railroad Company was collecting freight on the delivery at Canton piers on all coal received there by Lynah & Read, Inc., the latter would not prepay any freight bills or honor drafts from the scales agents for the same, then the jury" might infer that the appellant consented through "its agent the Pennsylvania Railroad Company that the latter company should accept as its agent and for its account from said Lynah & Read, Inc., the equivalent of the freight on all coal consigned by said Lynah & Read, Inc., from points on said Monongahela Railways Company to said Canton piers whenever an equivalent tonnage of coal was dumped for the account of said Lynah & Read, Inc., at said piers; and if the jury further find that there was dumped by or for the Keystone Coal & Coke Company at said Canton piers a tonnage equivalent to that sued for and that said Keystone Coal & Coke Company as the vendee of said Lynah & Read, Inc., paid or caused to be paid to the Pennsylvania Railroad Company the freight due on said

equivalent tonnage at the same rate as is claimed by the plaintiff in accordance with the tariff in this action, then said payments should be credited against the plaintiff's claim."

This prayer is predicated upon the proposition that the appellant waived the terms of the published tariff requiring the prepayment of freight and in lieu thereof agreed that the terminal carrier acting as its agent should appropriate and apply money collected by it for the liquidation of freight charges due by other persons to the payment of the freight charges for which the defendant had become liable when the shipment was initiated and to substitute an undertaking on the part of the terminal carrier to so make such collections and to so apply them for the obligation which the defendant had incurred under the published tariff.

We do not think that that proposition can be maintained. The appellant as well as the Pennsylvania Railroad Company is a common carrier engaged in interstate commerce, and as such is bound by the tariffs published and approved by the Interstate Commerce Commission, and it has not the power to waive or to abrogate in any case the provisions thereof. The Interstate Commerce Acts were designed and have uniformly been construed to promote and effect the uniform equal and impartial treatment of shippers and to outlaw discrimination, special favors, and special contracts and arrangements between carriers and shippers. That purpose would necessarily be defeated by such an agreement as that relied upon in this case. When the eleven cars of coal were shipped, the obligation of the shipper to pay freight thereon in advance under the terms of the published tariff was clear, unambiguous, and unquestionable. The initial carrier had no right to release that obligation except upon payment of the freight due, nor had the terminal carrier the right to act as the agent of the initial carrier for any purpose except the transportation of the coal. And even if it had the right to collect the freight charges due on that shipment, certainly it had no right to agree to apply money collected for freight

due on coal shipped by others to the payment of freight on the appellee's coal in the hope or with the expectation of reimbursement from freight which might be collected on the defendant's coal when it should be delivered.  Section 6, subsection 7 of the Interstate Commerce Act contains this express prohibition: "Nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified nor extend to any shipper or person any privilege or facilities in the transportation of passengers or property, except such as are specified in such tariffs." That a literal compliance with the terms of that section may result harshly in some cases, and that it may condone bad faith and broken promises in others, cannot justify its abrogation by agreements between shippers and carriers, for as was said in *Louisville & Nashville R. R. Co. v. Maxwell,* 237 U. S. 97: "Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext.  Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable.  Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed.  This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."  And that such an arrangement as that relied upon in this case was beyond the power of the appellant to make is settled by the case of *Pennsylvania R. R. Co. v. Hamilton Coal Company,* 144 Md. 569, and since the prayer makes the plaintiff's right to recover depend upon compliance with the terms of an agreement which it had no power to make, the prayer was bad, unless the plaintiff is by its conduct estopped from questioning the validity of the contract, and since it could not have been so estopped (*Bronstein v. Payne,* 138 Md. 116), in our opinion this prayer should not have been granted.

We have not dealt with the right of the appellant to extend credit in such cases because that question is not necessarily involved here, since the extension of credit could not affect the primary obligation which Lynah & Read, Inc., was required by the tariff to assume for the prepayment of freight, and even if the extension of credit was unwarranted and a violation of the terms of the tariff, that could not excuse Lynah & Read, Inc., from complying with its undertaking to pay the freight.

The defendant's fourth prayer presents this proposition, that if the plaintiff accepted the coal without requiring prepayment of freight, and, knowing that Lynah & Read, Inc., was "in the practice" of paying to the terminal carrier freight on coal actually delivered to it as a member of the Exchange, billed it to the Canton piers and there delivered it to persons other than Lynah & Read, Inc., without collecting the freight and without notifying Lynah & Read, Inc., of its delivery or of the fact that it, the terminal carrier, would not collect the freight due on it, and that Lynah & Read, Inc., did pay on other coal credited to it by the Exchange an amount equal to the amount of the freight bill sued on in this case, that the jury were entitled to credit such payment against the plaintiff's claim. This prayer is open to the same objection as the first prayer, but it is also objectionable for other reasons. It assumes as a matter of law that the defendant was entitled to notice (1) of the delivery of the coal, and (2) of the discontinuance of the practice of collecting freight at the pier. There was not, however, any legal obligation, however strong the moral obligation may have been, on the carrier to give notice that freight would not be collected at the piers after June 25th, 1920, because if the agreement to collect such freight, assuming there was such an agreement, was void and *ultra vires,* because it contravened the terms of the published tariff, the appellees was presumed to know that fact as well as the appellant, and it was not incumbent upon the appellant to inform the appellee of what it was as a matter of law presumed to know. And since the agreement upon

which the appellee relies required the carrier to perform services not set out in the published schedule, but additional thereto, it was in direct violation of the terms of the federal statute and void, and the services rendered under it illegal, and it became and was the duty of the carrier to promptly discontinue such services whenever it was apprised of the fact that it had not the right to perform them.

Nor was there any reason why the appellee should have been notified of the delivery of the coal shipped to it in the eleven cars referred to, because that coal was delivered on the order of the consignee, and Lynah & Read, Inc., had, under the rules of the Exchange of which it was a member, surrendered all its right, title and interest in that coal to the Exchange, which was the consignee.

For these reasons, in our opinion, there was error in granting the first and fourth prayers of the defendant, and because of those errors the judgment appealed from must be reversed and the cause remanded for a new trial.

> *Judgment reversed and cause remanded for a new trial, appellee to pay the costs in this Court.*