BALTIMORE & CAROLINA STEAMSHIP COMPANY
*v.* UNITED STATES MERCHANTS & SHIPPERS
INSURANCE COMPANY.
[No. 24, October Term, 1930.]

642

*Decided December 4th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Eben J. D. Cross,* with whom was *E. Ridgely Simpson* on the brief, for the appellant.

*Frank B. Ober* and *Robert Stinson,* with whom were *Janney, Ober, Slingluff & Williams* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a suit by the appellant carrier, on behalf of certain shippers of live stock feed, against the appellee insurance company, on a contract of marine insurance between the carrier and the insurance company. It involves the construction of an open insurance policy, issued by the insurance company to the carrier, in connection with contracts between the carrier and shippers; and a consideration of the bearing of the Interstate Commerce Act upon said contract.

The policy of insurance was issued to the appellant as "agent or owner, or as freighter, forwarder, bailee, common carrier or for whom it may concern," and was "upon all kinds of lawful goods or merchandise laden or to be laden on the good S. S. Betty Weems" for one year from June 27th, 1926, to June 27th, 1927. The policy included the following provisions:

> "It is hereby understood and agreed that this insurance shall attach only on such goods, etc., etc., as above as in case of loss or damage the Baltimore and Carolina Steamship Company may be liable for as owner, freighter, forwarder, bailee and/or common carrier, or upon which said company has agreed to effect insurance, or upon shipments destined to points on the Southern Railway * * * on the Atlantic Coast line," or Seaboard Air Line Railway "or received from those railroad companies upon which there is an actual or implied promise to insure.
>
> "At and between Philadelphia, Pa., and/or Baltimore, Md., and/or Wilmington, N. C., and/or Georgetown, S. C., and/or Charleston, S. C., and/or Brunswick, Ga., and/or Miami, Fla.; with privilege of calling at and trading between any intermediate ports and/or places. Also including risk on dock prior to shipment and/or after discharge, this insurance attaching and covering whether waterborne or not, from the time the risk on said goods, etc., etc., as above, is assumed or incurred by the said Baltimore and Carolina Steamship Company and to continue until delivery of the goods, etc., etc., as above, to consignees and/or connecting carriers and until the liability of the said Baltimore & Carolina Steamship Company is terminated."

The claim in this case is for the loss of parts of two shipments of feed. They were delivered on August 30th, and August 31st, 1926, by the Sugarine Company to the Louisville & Nashville Railroad Company and bills of lading duly executed. The feed was transported from Owensboro, Ken-

tucky, by various connecting carriers by rail, including the Atlantic Coast Line Railroad Company, to Charleston, South Carolina, where, on September 4th, 1926, it was delivered by the Atlantic Coast Line Railroad Company to the appellant steamship company in exchange for its receipt. The feed was unloaded from the car and put on the steamship "Betty Weems" at Charleston, and was transported by the steamship company on said ship from Charleston to Miami, Florida, where on September 10th, 1926, it was unloaded on appellant's dock covered by a warehouse. On September 17th parts of the shipments were delivered to the consignees, but during that night the remainder of the feed was destroyed by hurricane and sea waves while it was still on the company's dock.

Tariffs of appellant company had been filed with, and approved by, the Interstate Commerce Commission prior to August 30th, 1926, and were in effect from the time of their approval until a time subsequent to September 18th, 1926.

Claims for the value of the feed destroyed were presented by the consignees to the consignor and paid by the consignor, which, in turn, presented said claims to the appellant, which did not pay them, but made demand upon the appellee on behalf of the consignors on this open insurance policy, which demand was refused.

Suit was brought by appellant on behalf of the consignors, and the case presented on an agreed statement of facts. The only question at issue between the steamship company and the insurance company which was submitted to the court for determination was: Did the policy continue to cover the feed for more than forty-eight hours, plus a Sunday or legal holiday, if one intervened, after the feed was unloaded from the steamship? The case was tried by the court without a jury, and a verdict rendered in favor of the defendant. This appeal is from a judgment on that verdict.

The tariff of the appellant, covering shipments between Charleston and Miami originating at interior points, provided that "the rates published in this tariff do not include marine insurance, but same may be effected in accordance with pro-

visions and at the rates published in tariff of this company I. C. C. 47, or reissues thereof"; and the provision therein in reference to insurance is as follows:

"Traffic handled by this company under tariffs that do not include Marine Insurance as indicated below (except cotton) may be insured at the request and at the expense of either shippers or consignees, against marine risk while in the possession of this company, subject to and in accordance with the open policies held by this company, at the rate of fifteen cents (15c) per one hundred dollars ($100.00) valuation, subject to the minimum premium of twenty-five cents (25c), based on the invoice value of the property.

"Said insurance shall cover the property from time of receipt of shipment by this company until expiration of 48 hours after unloading of same from steamer at port of discharge, unless sooner delivered to owners, consignee or to a connecting line, and if a Sunday or legal holiday intervenes, during such Sunday or legal holiday also.

"Insurance outlined above may be placed upon application direct to this company's agent, * * * or by arranging with the carrier delivering the property to this company to specify on their waybill to this company the amount of such insurance desired. * * *."

Each of the bills of lading contained the statement, "Received subject to the classification of tariff in effect at the issue of this bill of lading"; and in each was typewritten the amount of insurance to be placed by the steamship company, and also on the company's receipts. The contracts between the carrier and the shippers are to be found in the tariff and bills of lading.

It will be readily seen that, in order to determine what the shipper's rights were, their contracts with the carrier must be read into the insurance policy, because the provision of the policy applicable to the shipments here involved is that the insurance shall attach only 'upon shipments destined to points on the Southern Railway Atlantic Coast Line,

or Seaboard Air Line Railway, or received from those railroad companies, upon which there is an actual or implied promise to insure." It is quite apparent that the policy was written to cover a number of conditions and contingencies, and that they were not all to be applicable to every case. It was intended to protect the carrier against its liability as a carrier; also to provide insurance where it has agreed to insure. In the latter case the extent of the application may depend upon whether the freight is entirely water-borne or otherwise independent of tariff regulation or whether it is within such regulation. For instance, the broad provision that the risk shall continue until delivery of the goods to the consignee may apply to the full extent in one case, and, in the other, may be modified by limitations in the tariff. The present case is one where the tariff entered into, and became a part of, the contract of insurance, and it becomes necessary to determine what the provision therein in regard to insurance means.

The contention of appellant is that the phrase, "said insurance will cover the property from time of receipt of shipment by this company until expiration of forty-eight (48) hours after unloading" means a minimum rather than a maximum period. But we do not think that is its natural meaning. For there would be no occasion to fix a minimum period if the expression in the preceding clause, "while in possession of this Company," is to control. On the principle that the greater includes the less, the provision as to a minimum period would be superfluous and confusing. We think the meaning of the two clauses is the same as if the words quoted from both were brought together so as to read: "While in possession of this Company, subject to and in accordance with the open policies held by this Company, not exceeding forty-eight hours after unloading of same from steamer at port of discharge."

But if it were possible to find contracts between the shippers and the carrier without reference to the carrier's tariff, and that under these contracts it was clearly the purpose of the carrier to give, and the expectation of the shippers to

receive, protection under the carrier's insurance policy until delivery of the goods, even if such delivery should be delayed beyond the time limited in the tariff, the contracts would be unenforceable, because violative of the Interstate Commerce Act, in that such contracts would give shippers a service, advantage or privilege not provided by the tariff. On this point we think our decisions in *Pennsylvania R. R. Co. v. Hamilton Coal Co.,* 144 Md. 556, and *Monongahela Ry. Co. v. Read,* 147 Md. 144, are controlling. See also *Keogh v. Chic. & N. W. R. Co.,* 260 U. S. 156; *Southern Railway Co. v. Prescott,* 240 U. S. 632; *Chicago, St. P. M. & O. R. Co. v. United States,* 162 Fed. 835; *Pennsylvania Co. v. United States,* 257 Fed. 261.

*Judgment affirmed, with costs to appellee.*