# UNITED STATES OF AMERICA *v.* ESSYE B. WILLIAMS

[Misc. No. 6, September Term, 1976.]

*Decided March 21, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Thomas G. Banjanin, Assistant U. S. Attorney,* with whom was *Jervis S. Finney, United States Attorney,* on the brief, for appellant.

*Henry J. Myerberg* and *Bruce A. Kaufman,* with whom was *Herbert Myerberg* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

The issues raised by this case are posed by three questions of law certified to this Court by the United States District Court for the District of Maryland:[1]

> "1. Is federal military retirement pay which is paid to retirees of the Armed Services of the United States of America, 'wages' within the meaning of Annotated Code of Maryland, Commercial Law Article Section 15-601?
>
> "2. If federal military retirement pay which is paid to retirees of the Armed Services of the United States of America is 'wages' within the meaning of Annotated Code of Maryland, Commercial Law Article Section 15-601, do the exemptions from garnishment provided in Section 15-602 apply to federal military retirement pay where the underlying obligation is for alimony?
>
> "3. Must separate Writs of Attachment by way of garnishment be filed each month pursuant to Annotated Code of Maryland, Commercial Law Article Sections 15-601, 602 in order to attach federal military retirement pay which is paid to

---

1. *See* Maryland Code (1974, 1976 Cum. Supp.), Courts and Judicial Proceedings Article § 12-307 (3) and §§ 12-601-609.

retirees of the Armed Services of the United States of America?"

The facts which underlie the problem are summarized in the briefs filed by the parties. When the domestic litigation was initiated, Walter A. Williams was a Chief Warrant Officer in the United States Army on active duty in Germany. His wife, Mrs. Essye B. Williams, was a resident of Maryland. On 3 March 1972, Mr. Williams filed in the Circuit Court No. 2 of Baltimore City a bill of complaint against Mrs. Williams, seeking a divorce. In July of the same year, Mrs. Williams filed a cross bill of complaint against Mr. Williams in the same court and obtained an order directing Mr. Williams to pay her $300.00 per month as temporary alimony. In October, 1972, Mrs. Williams filed an amended and supplemental cross bill of complaint. Mr. Williams' payments of alimony were sporadic, and Mrs. Williams' attempts to effect collection were something less than successful.

In March of 1975, Mr. Williams instituted divorce proceedings against Mrs. Williams in the Regional Court of Wiesbaden, West Germany. In October of that year, Mrs. Williams was successful in obtaining an injunction, enjoining further action by Mr. Williams in the case pending in Germany.

Later in 1975, the combat was resumed in Baltimore, where in October Mrs. Williams obtained a monetary judgment for $10,427.00 for arrearages in alimony. In November, after an evidentiary hearing, a decree of divorce a vinculo matrimonii was granted Mrs. Williams. The decree, by its terms, preserved the injunction forbidding further proceedings in Germany, preserved the monetary judgment, and provided for permanent alimony, the payment of counsel fees, and entered a monetary decree for additional arrearages of alimony which had accumulated.

At about this time, Mr. Williams retired from the army and began to receive the pension to which he was entitled. In January, 1976, Mrs. Williams filed a writ of attachment with

the United States under 42 U.S.C. § 659 to effect a collection of the arrearages of alimony.[2]

The United States responded that Williams' retirement pay constituted earnings under 15 U.S.C. § 1672 (a) which provides that:

"For the purpose of this title:

"(a) The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."

and alleged that Maryland Code (1975), Commercial Law Article §§ 15-601 and 15-602 impose limitations on the garnishment of wages, which would require Mrs. Williams to seek reimbursement by the filing of writs of attachment monthly.[3]

---

2. 42 U.S.C. § 659 provides:

"§ 659. Consent by the United States to garnishment and similar proceedings for enforcement of child support and alimony obligations

"Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States (including any agency or instrumentality thereof and any wholly owned Federal corporation) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments."

3. Code (1975), Commercial Law Article §§ 15-601 and 15-602 provide, in pertinent part:

"§ 15-601. Definitions.

"(a) *In general.* — In this subtitle the following words have the meanings indicated.

"(b) * * * *

"(c) *Wages.* — 'Wages' means all monetary remuneration paid to any employee for his employment."

"§ 15-602. Wages subject to attachment.

"(a) *Wages to be due at date of attachment.* — An attachment of an employee's wages in the hands of his employer does not affect those wages not actually due at the date of the attachment.

Mrs. Williams challenged this contention. The United States filed a petition to remove the case to the United States District Court for the District of Maryland. Mrs. Williams' motion to remand on the ground that the United States District Court was without jurisdiction was denied,[4] and the Order of Certification followed.

We propose to answer the first and third of the certified questions in the affirmative and the second in the negative and shall state our reasons.

1.

Probably the most recent case holding that a pension paid to a retired member of the military services constitutes wages is *Ables v. Ables*, 540 S.W.2d 769 (Tex. Civ. App. — Waco 1976). While decided in a different context, whether the right to retirement pay earned during marriage constituted vested community property subject to division at time of divorce, the court accepted the husband's contention that

"... regular officers retire only from active duty and remain members of the military subject to continuing controls of the government which materially affect their right to pay after retirement."

Among those controls, he enumerated: recall to active duty, 10 U.S.C. § 8504; court-martial for offenses committed during retirement, 10 U.S.C. § 802, with consequent loss of pay and allowances, *Hooper v. United States*, 326 F. 2d 982, *cert. denied*, 377 U. S. 977 (1964), and subjection to federal

---

"(b *Exemption from attachment*. — The following amounts of wages shall be exempt from attachment:

"(1) Except as provided in paragraph (2) of this subsection, the greater of:

"(i) The product of $120 multiplied by the number of weeks in which the wages due were earned; or

"(ii) 75 percent of the wages due; . . . ."

4. *Compare* Morrison v. Morrison, 408 F. Supp. 315, 317 (N.D. Tex. 1976) *with* Wilhelm v. United States Dept. of Air Force Accounting and Finance Center, 418 F. Supp. 162 (S.D. Tex. 1976).

dual compensation act, 5 U.S.C. § 5532 b. This led the court in *Ables* to reach the conclusion that retirement pay is not a pension for past services, but "a current salary earned on a monthly basis," 540 S.W.2d at 770. To the same effect is *Lemly v. United States*, 75 F. Supp. 248, 249 (1948). Compare the ultimate result reached in *Ables, supra*, with that reached in *Ellis v. Ellis*, Colo., 552 P. 2d 506 (1976) (retirement pay is not a vested interest, subject to division as community property).

While the decisions under Title 15, Subtitle 6 of our Commercial Law Article are not particularly helpful, *Bendix Radio Corp. v. Hoy*, 207 Md. 225, 114 A. 2d 45 (1955) makes it clear that wages not actually due when the attachment is laid are not subject to attachment, primarily because the employee's right to sue the garnishee has not matured, *Cole v. Randall Park Holding Co.*, 201 Md. 616, 95 A. 2d 273 (1953), and Comment, *Attachment of Wages in Maryland*, 16 Md. L. Rev. 227, 231-32 (1956) notes that our cases regard wages as compensation for services rendered.

We conclude, therefore, that Williams' retirement pay constitutes wages for purposes of attachment under Code § 15-602 of the Commercial Law Article, and is not included in certain rights exempt from execution under Code (1957, 1970 Repl. Vol.) Art. 73B, § 17, which relates exclusively to pensions paid by the State and its subdivisions.

2.

Having determined that federal military retirement pay constitutes wages, the exemptions from attachment provided by § 15-602 (b) (1) (i) and (ii) are inapplicable, because the underlying obligation is for intra-familial support and the very purpose of the statutory exemptions is to protect a family from being deprived of all support by attachment proceedings brought by an outsider. While we have been referred to no cases of this Court supporting this proposition, an apt analogy can be drawn from *Safe Deposit & Trust Co. v. Robertson*, 192 Md. 653, 65 A. 2d 292 (1949) which permitted the attachment of income from a spendthrift trust to collect arrearages of alimony, although

recognizing that the same income was beyond the reach of creditors. *See* Annot., 54 A.L.R.2d 1424, 1432, 1437 (1957); 24 Am. Jur.2d, *Divorce and Separation* § 721 at 826-27 (1966).

3.

Assuming, as we must, that federal military retirement pay constitutes wages, and that Code § 15-602 (a) and our case law prohibit the attachment of wages not actually due at the date of the attachment, it follows necessarily that separate writs of attachment must be filed each month in order to reach the retirement pay to which Williams has become entitled.

We are not to be understood as passing upon whatever rights Mrs. Williams may have under the provisions of Code (1957, 1973 Repl. Vol., 1976 Cum. Supp.) Art. 16, § 5B, enacted by Chapter 496 of the Laws of 1976, effective 1 July 1976, which permits the imposition of a lien on earnings due or to become due if payments for the support of a spouse are in arrears for two months in any 24 months prior to the filing of a petition for the imposition of a lien. Nor have we considered the question whether the payment of the monetary decrees entered by the Circuit Court No. 2 of Baltimore City may be enforced by contempt proceedings, Maryland Rule 685 c.

> *Questions of law answered as herein set forth; costs to abide the result.*