ELLA ELIZABETH POPE *v.* WILLIAM JOSEPH POPE,
SR. ET AL.

[No. 168, September Term, 1977.]

*Decided September 14, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*John C. Eidleman* and *Carolyn Rodis Boyd* for appellant.

*Carolyn I. Polowy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Joel J. Rabin* and *Lois F. Lapidus, Assistant Attorneys General,* on the brief, for appellee Employment Security Administration. No brief filed on behalf of William Joseph Pope, Sr.

DIGGES, J., delivered the opinion of the Court.

This case requires us to determine whether a court, pursuant to a statutory grant of authority to establish a lien on the earnings of a person in arrears on court-ordered support payments, may place a lien on that person's unemployment benefits — or whether, to the contrary, such a lien to satisfy a support order is prohibited by the section of the Maryland Unemployment Insurance Law which invalidates encumbrances of the right to benefits. Our perusal of the pertinent statutes and case law persuades us that the imposition of this type of lien is permissible.

We need not linger long on the particular facts of this case, since the issue we decide is a straightforward one of statutory construction and in no way dependent on the vagaries of the circumstances here. Briefly, appellant Ella Elizabeth Pope, former wife of appellee William Joseph Pope, Sr., sought to enforce the provisions of a decree under which Mr. Pope was to pay her permanent alimony of $20.00 per week. The Circuit Court of Baltimore City, Dorf, J., finding a sufficient

arrearage in the payments and acting pursuant to statutory provisions for the enforcement of spousal support, *see* Md. Code (1957, 1973 Repl. Vol., 1977 Cum. Supp.), Art. 16, § 5B, ordered a lien to the extent of $20.00 per week against the unemployment benefits due or to become due to Mr. Pope from the Employment Security Administration. The latter agency, an appellee here, subsequently moved to vacate that order, arguing that unemployment insurance benefits are not earnings within the meaning of the spousal support statute and, in addition, that a lien on those benefits contravenes section 16 (c) of the Unemployment Insurance Law. Md. Code (1957, 1969 Repl. Vol.), Art. 95A, § 16(c). The chancellor agreed and vacated the order, an action which precipitated this appeal.[1] We granted certiorari prior to consideration of the matter by the Court of Special Appeals, and now reverse the final action of the chancellor and direct that the order imposing the lien be reinstated.

We may quickly dispose of the contention by the Employment Security Administration — ESA — that unemployment insurance benefits are not earnings within the meaning of section 5B of Article 16, which permits the court to order a lien on the earnings of a person defaulting on a court order to pay support.[2] Section 5B(a)(2) defines "earnings" as encompassing *"any form of periodic payment* to an individual, *including* annuity, pension, social security, and workmen's compensation payments." (Emphasis supplied.)[3] Although it is incontrovertible that un-

---

1. Mr. Pope, the other appellee, did not file a brief or otherwise participate in this appeal.

2. Section 5B (b) (1) reads:

> If a court has ordered a person to pay for the support of a spouse or dependent child and the person is in arrears, on petition of the person to whom payment had been ordered and on a finding by the court that arrearages within the 24-month period immediately preceding submission of the petition equal a sum of two months payments, the court may order a lien on the earnings of the defaulting party, due or to be due, in an amount sufficient to pay the support ordered by the court. The court shall cause a copy of the order to be served immediately on the employer of the defaulting party.

3. Section 5B (a) (3) defines "employer" as "any person, including any public entity, making payments of earnings to an individual."

employment benefits are a form of periodic payment to an individual, thus bringing them within the plain meaning of the statutory definition, ESA contends that since this particular form of periodic payment is not specifically listed along with the other forms enumerated after the word "including," the statute should not be extended by judicial interpretation to include unemployment benefits. In response to this suggestion, we merely observe that neither is it appropriate to restrict a remedial statute by judicial interpretation, especially when that would require us to hold, without support from either statute or case law, that a particular form of periodic payment to an individual is not in fact a form of periodic payment to an individual.[4]

We come now to the substance of ESA's objection to the imposition of a lien for alimony payments on unemployment benefits: that the first clause of section 16(c) of the Unemployment Insurance Law absolutely prohibits all encumbrances on the right to benefits, including a lien for support payments otherwise authorized by Article 16, section 5B. Section 16 (c) reads:

(c) *No assignment of benefits; exemptions.*—No assignment, pledge, or encumbrances of any right to benefits which are or may become due or payable under this article shall be valid; and such rights to benefits shall be exempt from levy, execution, attachment, or any other remedy whatsoever provided for the collection of debt; and benefits received by any individual, so long as they are not mingled with other funds of the recipient, shall be exempted from any remedy whatsoever for the collection of all debts. No waiver of any exemption provided for in this subsection shall be valid. [Md. Code (1957, 1969 Repl. Vol.), Art. 95A, § 16 (c).]

---

4. Unemployment insurance benefits are, in fact, similar to such enumerated examples of periodic payments as social security and workmen's compensation in that each of them is dependent, in one way or another, on past employment.

We have concluded that section 16(c), while invalidating "encumbrances of any right to benefits," does not prohibit a lien for alimony and that there is, therefore, no conflict between the unemployment insurance statute and the spousal support law.

The first, and perhaps the more potent of the principles forming the basis of our conclusion, is one that this Court applied only last term in *United States v. Williams,* 279 Md. 673, 370 A. 2d 1134 (1977); that statutes and constitutional provisions exempting specific property from legal process are usually construed, absent a specific statutory provision to the contrary, to be inapplicable as against a claim for alimony or support. Indeed, the principle applied in *Williams* makes that case virtually dispositive of the present one. In *Williams* the wife had obtained a monetary judgment for arrearages in alimony and filed a writ of attachment with the United States in order to effect collection from the husband's military retirement pay. *Id.* at 675-76 [1136]. In response to questions certified to this Court from the United States District Court for the District of Maryland, we determined that the husband's retirement pay constituted wages within the meaning of State law governing attachment of wages, *see* Md. Code (1975), §§ 15-601 to -603 of the Commercial Law Article, but that the exemption of certain amounts of the wages from attachment, as provided by section 15-602 (b) of the statute, did *not* apply since the attachment was to effect the collection of alimony. 279 Md. at 678-79, 370 A. 2d at 1137. Section 15-602 (b) is absolute on its face, providing that:

> The following amounts of wages *shall be exempt from attachment:*
>
> (1) Except as provided in paragraph (2) of this subsection [providing different amounts in certain counties], the greater of:
>
> (i) The product of $120 multiplied by the number of weeks in which the wages due were earned, or
>
> (ii) 75 percent of the wages due . . . [(Emphasis added.)]

Despite this seemingly unambiguous language and the lack of any expressed statutory exception to the quoted provision, we concluded that section 15-602 (b) did not apply, and thus that no part of the wages was exempt from attachment for past-due alimony, "because the underlying obligation is for intra-familial support and the very purpose of the statutory exemptions is to protect a family from being deprived of all support by attachment proceedings brought by an outsider." *United States v. Williams, supra* at 678 [1137]; *cf. Safe Deposit & Tr. Co. v. Robertson,* 192 Md. 653, 663, 65 A. 2d 292, 296 (1949) (refusing to allow the rule giving legal effect to spendthrift provisions of a trust as against contract creditors to be extended to claims for support or alimony, since in such a situation a wife's claim "is based upon the strongest grounds of public policy"). The rationale given in *Williams* for failing to adhere to the literal language of the statute is equally applicable in the case now before us, for the very purpose of invalidating assignments of unemployment benefits and of exempting them from attachment, as of the entire Unemployment Insurance Law, is "to lighten [the] burden which now so often falls with crushing force upon the unemployed worker *and his family.*" Code, Art. 95A, § 2 (emphasis added).[5]

There is nothing unique in the principle which we applied in *Williams* in interpreting the exemption statute before the Court there and which we reiterate today. *See, e.g., Schlaefer v. Schlaefer,* 112 F. 2d 177, 184-88 (D.C. Cir. 1940) (statute exempting disability insurance benefits from attachment or other process to pay any "debt or liability" not applicable to claim for alimony or support; court notes that general exemption statutes containing no explicit exceptions have been held not applicable to such claims) (citing cases); *Mahone v. Mahone,* 213 Kan. 346, 517 P. 2d 131, 133-34 (1973) (statutory exemption of pension funds from "execution, garnishment, or attachment, or any other process or claim whatsoever" not applicable when in conflict with enforcement of a decree or claim for child support); *Fischer v. Fischer,* 13

---

5. We note in the record of this case an order of the Circuit Court of Baltimore City finding Mrs. Pope to be an indigent and waiving payment of final court costs in the proceedings below.

N. J. 162, 98 A. 2d 568, 569-70 (1953) (statute exempting pensions from "execution, garnishment, attachment, sequestration or other legal process" does not immunize pension from judicial process to enforce alimony decree); *Brown v. Brown,* 32 Ohio App.2d 139, 288 N.E.2d 852, 853-54 (1972) (trial court properly restrained use of social security check pending a determination of permanent alimony since alimony request is unaffected by social security statute exempting benefits from "execution, levy, attachment, garnishment, or other legal process"); 24 Am.Jur.2d *Divorce and Separation* § 721, at 826 (1966) (statutes exempting property from legal process not applicable to claim for alimony or support); Annot., 31 A.L.R.3d 532, § 6 (1970) (exemption of workmen's compensation awards from creditors' claims does not extend to claims based on award of alimony or support). Although this interpretation of exemption statutes is apparently the majority view, *see Mahone v. Mahone, supra,* 517 P. 2d at 134; Annot., 54 A.L.R.2d 1422, § 6 (1957), it is not universally accepted. *See, e.g., Ogle v. Heim,* 69 Cal. 2d 7, 442 P. 2d 659, 660-63, 69 Cal. Rptr. 579, 580-83 (statute exempting pensions from attachment or execution bars divorced wife's claim for child support; court not authorized to create exceptions not specifically made), *appeal dismissed,* 393 U. S. 265 (1968); *Utley v. Utley,* 355 Mass. 469, 245 N.E.2d 435, 436-37 (1969) (court may not write exception for support payments into statute providing that pension rights may not be attached or taken upon execution or other process).

The courts which accept the principle we adopted in *Williams* are simply recognizing that the legislative purpose underlying such statutes is the protection of the various types of benefits involved from the claims of creditors — not from the claim of a former wife for alimony, which often, as in Maryland, is not considered a debt. *See, e.g., Dickey v. Dickey,* 154 Md. 675, 681, 141 A. 387, 390 (1928) ("obligation to pay alimony in a divorce proceeding is not regarded as a debt but a duty growing out of the marital relation and resting upon a sound public policy"); Md. Const., Art. III,

§ 38. The rationale was well stated by the Supreme Court of New Jersey in *Fischer v. Fischer, supra,* 98 A. 2d at 571:

> A statute is not to be given an arbitrary construction, according to the strict letter, but one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of terms; the obvious policy is an implied limitation on the sense of general terms .... The reason of the law, i.e., the motive which led to the making of it, is one of the most certain means of establishing the true sense. ...

> [T]he essential purpose of such immunity from process is the protection not only of the pensioner, but of his family as well, from destitution and the need for public relief, and, absent a clear and definite expression *contra,* the provision will not be read to enable the husband to claim the full benefit of the pension as against his dependent wife and children, and thus to subvert the laws enjoining upon the husband the performance of this basic obligation of the marriage state.

Even absent the doctrine this Court adopted in *Williams,* we would not interpret section 16 (c) of the unemployment insurance statute to forbid liens to satisfy alimony claims, since the structure and introductory words of the section demonstrate that the legislature did not intend the language invalidating any "assignment, pledge, or encumbrances" to have the broad sweep suggested by ESA. It is clear to us that section 16 (c) was intended to accomplish two purposes: The first clause prevents the recipient of benefits from voluntarily assigning them to anyone else by invalidating any "assignment, pledge, or encumbrances" of any right to benefits; the second and third clauses exempt the right to benefits, and benefits actually received, respectively, from any and all remedies for the collection of debt, thereby assuring that those benefits cannot be reached by the recipient's creditors. That the first clause invalidating "encumbrances"—the language so heavily relied on by

ESA—simply forbids encumbrances placed on the benefits *by the recipient* becomes apparent when the clause is read in conjunction with the remainder of the section, as we are bound to do. *See Maguire v. State,* 192 Md. 615, 623, 65 A. 2d 299, 302 (1949) (adherence to meaning of words does not require or permit isolation of words from their context; meaning of plainest words in a statute may be controlled by context). We so conclude because, first, the legislature's own summary of the material in section 16 (c) as shown by the introductory language — *"No assignment of benefits; exemptions"*—indicates that the first clause involves "assignments," and the remainder of the section involves "exemptions." The word "encumbrances" in that first clause is thus used in the same sense as "assignment" and "pledge," *i.e.,* as involving voluntary actions on the part of the recipient of benefits. Secondly, and perhaps more significantly, if the word "encumbrances" in the first clause applied to flatly invalidate all encumbrances of whatever kind imposed by any person on the right of an unemployed worker to benefits, as ESA would have it, the entire second clause of the statute exempting such rights from all remedies for the collection of debt would be totally unnecessary.

We think, then, considering the entire section in its natural and ordinary signification, that the first clause merely prevents the recipient from encumbering his right to benefits under the statute. Since the second and third clauses, which address the exemption of benefits from remedies invoked by a third party, specifically apply only to remedies for the collection of debt,[6] and since, as we have already noted, alimony is not a debt in this State, the ineluctable conclusion is that the statute in no way purports to prohibit the imposition of a statutory lien for the enforcement of court orders for spousal support—it simply does not address that question.

---

6. The use of the word "other" in the second clause of section 16 (c)—"such rights to benefits shall be exempt from levy, execution, attachment, or any *other* remedy whatsoever provided for the collection of debt" (emphasis added)—makes it clear that the legislature was exempting the right to benefits from any and all remedies for the collection of debt, including levy, execution, and attachment.

Our construction of section 16 (c), under either of the analyses we have offered, is consistent with giving full effect to the statute—lightening the burden of unemployment which falls upon the unemployed worker and his family, *see* Art. 95A, § 2—and in addition "renders the statute consistent with others which provide methods for enforcement of the husband's and the father's duty of support," *Schlaefer v. Schlaefer*, 112 F. 2d 177, 186 (D.C. Cir. 1940), *i.e.,* section 5B of Article 16. Thus, because the Unemployment Insurance Law does not prohibit a lien on benefits for the purpose of enforcing an alimony order, and because the statutory provisions governing the enforcement of spousal support permit such a lien, it follows that the chancellor, once having concluded under all the circumstances that a lien on earnings was justified, should not have vacated his order imposing a lien on Mr. Pope's benefits.

> *Order of the Circuit Court of Baltimore City dated September 15, 1977, vacated and case remanded to that court with instructions to reinstate the order dated March 11, 1977.*
> *Costs to be paid by the Employment Security Administration.*