**In re Willie COX et ux., Debtors.**

**Willie COX, Plaintiff,**

**v.**

**GENERAL ELECTRIC CREDIT CORP., Defendant.**

**Bankruptcy No. 79–2–2020–L. Adv. No. 80–0153.**

United States Bankruptcy Court, D. Maryland.

April 10, 1981.

Stephen M. Hearne, Sherbow, Shea & Tatelbaum, Baltimore, Md., for debtor, Willie Cox.

Stanley Alpert, Greif, Cohen & Alpert, Baltimore, Md., for creditor, General Electric Credit Corp.

## MEMORANDUM OPINION AND ORDER

HARVEY M. LEBOWITZ, Bankruptcy Judge.

This case calls upon the Court to determine the avoidability of a wage garnishment payment made to a judgment creditor during the ninety-day period prior to the filing of a bankruptcy petition when such payment was based upon an attachment served upon the garnishee more than ninety days before the filing of the bankruptcy petition. In so doing, this Court must examine the impact that the Bankruptcy Reform Act of 1978, Pub.L.No.95–598, 92 Stat. 2549, 2683 (1978) (codified at 11 U.S.C. §§ 101–1330 (Supp. III 1979)) (the "Code"), may have upon the Fourth Circuit's holding in *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir. 1968). The questions presented here are matters of first impression in this district insofar as the Code is concerned.

### I.

The Debtors filed a petition for relief under Chapter 7 of the Code on November 27, 1979. Thereafter, Willie Cox individually filed this adversary proceeding under §§ 522(h) and 547(b) of the Code seeking to recover wages garnished by the defendant General Electric Credit Corporation during the ninety-day period immediately preceding the filing of the bankruptcy petition. During that period, Cox's employer, Bausch & Lomb, withheld $507.88 from his payroll checks, and paid the funds over to General Electric Credit pursuant to an attachment served on July 12, 1979.[1] Prior to the filing

---

1. At trial, the parties assumed that General Electric Credit Corporation's writ of garnishment had been filed on June 20, 1979. The memorandum of law later submitted by General Electric Credit Corporation, however, alleges that a second writ was served on July 12, 1979. For purposes of this opinion, the Court will assume that this second writ was the one upon

of the Coxes' Chapter 7 petition in this Court, General Electric Credit recovered funds by way of the garnishment sufficient to pay its judgment in full, and accordingly had an order of satisfaction entered in the state court proceedings.

A trustee was duly appointed by this Court's Order of January 11, 1980. On March 25, 1980, the Trustee refused Cox's demand that an action be instituted under § 547 of the Code to avoid the payments made within ninety days of filing as a preference. The Second Amended Schedule B-4 filed by Willie Cox on May 8, 1980, reflects an exemption of $689.57 under § 522(d)(5) and § 522(g) attributable to "voidable preference" in the possession of "G.E.C.C."

## II.

■ Under § 522(g) of the Code, the Debtor is now permitted to exempt property that is recovered by the Trustee and thus the provisions of the Bankruptcy Act that barred exemption by a bankrupt of property recovered by the Trustee through avoidance have been eliminated. 3 Collier on Bankruptcy ¶ 522.30 (15th ed. 1980). In addition, § 522(h) of the Code provides that the "debtor may avoid a transfer of property of the debtor ... to the extent that the Debtor could have exempted such property under subsection (g)(1) ... if—(1) such transfer is avoidable by the trustee under section ... 547 ... and (2) the trustee does not attempt to avoid such transfer." 11 U.S.C. § 522(h) (Supp. III 1979). Congress contemplated that this provision would "give the debtor the rights the trustee could have, but has not, pursued," S.Rep.No.95–989, 95th Cong. 2nd Sess. 77 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5863. *In re Saberman*, 3 B.R. 316, 319–20, 1 C.B.C.2d 671, 674–75 (B.Ct., N.D.Ill.1980).

which the garnishment continued during the ninety-day period preceding bankruptcy. Inasmuch as such a procedure was not in existence prior to July 1, 1979, it is unlikely that the June 20th writ was the one upon which the continuing garnishment was based. Moreover, at no

## III.

■ Under the new statutory scheme for wage garnishments in Maryland, a judgment creditor need file but one writ of attachment on judgment by way of garnishment of wages so long as the judgment debtor remains employed by the garnishee. After July 1, 1979, such an attachment constitutes "a lien on all attachable wages that are *payable* at the time the attachment is served *or which become payable* until the judgment, interest, and costs, as specified in the attachment, are satisfied." Md. Com.Law Code Ann. § 15–602(a) (Supp. 1980) (emphasis added); *See also* Md. Rule F6. This represents a significant change from prior law. Prior to July 1, 1979, Maryland law provided that an "attachment of an employee's wages in the hands of his employer [did] not affect those wages *not actually due* at the date of the attachment." Md.Com.Law Code Ann. § 15–602(a) (1975) (emphasis added). As the Court of Appeals of Maryland has frequently observed, the extent of the judgment creditor's lien depends upon the rights subsisting between the garnishee and the judgment debtor. Thus, the "test of the garnishee's liability is that he has funds, property of the debtor, for which the debtor would have the right to sue." *Bendix Radio Corp. v. Hoy*, 207 Md. 225, 229, 114 A.2d 45, 47 (1955). *Accord, United States v. Williams*, 279 Md. 673, 678, 370 A.2d 1134, 1137 (1977); *Messall v. Suburban Trust Co.*, 244 Md. 502, 519, 224 A.2d 419, 428 (1966) (Barnes, J., dissenting). Under the new statute, however, the judgment creditor's lien also attaches to property that comes into the hands of the garnishee *after* the writ is served.

■ In the instant case, General Electric Credit duly filed its writ of garnishment on July 12, 1979, and lawfully satisfied its judgment from wages accruing to the debtor thereafter. Inasmuch as § 547(b) of the Code only applies to "any transfer" that

time in these proceedings has Cox challenged the lawfulness of the garnishment as a matter of state law. Thus, such an assumption is consistent with the parties' formulation of their respective legal positions in this case.

occurs within ninety days of the filing of a petition under the Bankruptcy Code, the plaintiff seeks only to avoid the garnishments attributable to wages earned on or after August 30, 1979 and not those related to wages earned prior to that date. General Electric Credit, relying in part upon *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir. 1968), contends that the writ served upon the garnishee was valid and perfected against any subsequent judgment creditor proceeding on a simple contract, and thus the "transfer" of all wages garnished occurred on July 12, 1979, more than ninety days before the bankruptcy.

In *Walutes*, the Fourth Circuit held that a payment made in satisfaction of a writ of attachment perfected outside the four-month preference period established by § 60(a)(1) of the Bankruptcy Act was not an avoidable preference if made within the four-month period. The attaching creditor in *Walutes* had filed a writ of attachment on original process. Under the law of Maryland, such an attachment created "an inchoate lien on [the] Bankrupt's property, credit or funds in the hands of [the garnishee] at the time of service." 390 F.2d at 352. Because of a new provision in the Code, it becomes unnecessary, under the facts of this case, to determine the impact of *Walutes* upon the avoidability of garnishment payments made within the preference period under a continuing attachment procedure such as the new statute adopted in Maryland.[2]

Section 547(e)(3) of the Code provides that "a *transfer* is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3) (Supp. III 1979) (emphasis added). This limitation is a significant departure from the law as to preferences under the Act. 4 Collier on Bankruptcy ¶ 547.45, at 547–135 (15th ed. 1980). Section 547(e)(3) is similar to the Uniform Commercial Code provision that a security interest cannot attach until "the debtor has rights in the collateral." Md. Com.Law Code Ann. § 9–204(1) (1975). *Cf.* Md.Com.Law Code Ann. § 9–203(1)(c) (Supp.1980) (effective January 1, 1981). Moreover, § 547(e)(3) was intended by Congress to overrule expressly cases such as *Grain Merchants of Indiana, Inc. v. Union Bank & Savings Co.*, 408 F.2d 209 (7th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969). H.R.Rep.No.95–595, 95th Cong., 1st Sess. 374–75 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787.

In *Grain Merchants*, the bankruptcy referee held that an account receivable was transferred to a secured party at the time that the account came into existence. The Seventh Circuit affirmed the District Court reversal of the referee's decision on the ground that the transfer of the account occurred at the time that the creditor perfected its security interest. Because the creditor had perfected rights in after-acquired accounts receivable more than four months prior to the bankruptcy petition, the Seventh Circuit concluded that the rights subsequently acquired in the accounts were not a preference under § 60(a) of the Act. Such a holding, however, is now expressly contrary to the provisions of § 547(e)(3). 4 Collier on Bankruptcy ¶ 547.45, at 547–135 (15th ed. 1980).

The current Maryland wage garnishment statute places an attaching judgment creditor in a position analogous to *Grain Merchants*. A writ of garnishment may well be a duly perfected lien on wages yet to be earned such that a creditor on a simple contract cannot acquire a judicial lien that is superior to the rights of the judgment creditor. *Cf.* 11 U.S.C. § 547(e)(1)(B) (Supp. III 1979). Nonetheless, the avoidance powers under § 547(b) extend to the avoidance of transfers rather than perfection of liens.

---

**2.** Nonetheless, *Walutes* may have some application to the instant case. Although the record is unclear, to the extent that a payment may have been made during the preference period that is attributable to wages payable to Cox on or before July 12, 1979 (the date of the second garnishment), such a payment would not be avoidable under § 547 of the Code. Such a possibility is created by the provision of Maryland Rule F6(h)(1) that the garnishee need remit to the judgment creditor only "within 15 days after the close of the Debtor's last pay period in each month."

Inasmuch as § 547(e)(3) establishes that a transfer does not occur until the debtor has rights in the collateral, the transfer of wages garnished pursuant to a writ of garnishment cannot occur until the judgment debtor has earned the wages garnished. Thus, a payment on a garnishment attributable to wages earned by the debtor within ninety days of the filing of a bankruptcy petition is a preferential transfer to the judgment creditor. If as in this case the garnished wages have been exempted by the debtor, and the trustee does not act to avoid the transfer under § 547, the debtor may properly bring such an action under § 522(h).

For the reasons stated in the above Memorandum Opinion, it is this 10th day of April, 1981, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, ADJUDGED, and DECREED that a JUDGMENT in the amount of Five Hundred Seven Dollars and Eighty-eight Cents ($507.88) should be, and the same is hereby GRANTED in favor of the Plaintiff WILLIE COX against the Defendant GENERAL ELECTRIC CREDIT CORPORATION, together with costs and interest from the date hereof.