REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2504

September Term, 2014

BYRON ALEXANDER KELLY

v.

MONTGOMERY COUNTY OFFICE
OF CHILD ENFORCEMENT, *ET AL.*

Kehoe,
Leahy,
Raker, Irma, S.,
(Retired, Specially Assigned)
                                    JJ.

Opinion by Kehoe, J.

Filed: February 24, 2016

Maryland law authorizes a judgment creditor to attach assets of the debtor to satisfy the judgment. Our attachment law has a number of exemptions. In this case, we must decide whether one such exemption is available in child support enforcement actions.

The chain of events giving rise to this appeal began in 2014 when the Montgomery County Office of Child Support Enforcement (the "Office") sought to collect a judgment of $9,866.80 against Byron Alexander Kelly for unpaid child support. At the request of the Office, the Circuit Court for Montgomery County issued a writ of garnishment against Capital One Bank, N.A. There were two accounts in Kelly's name at the bank with a combined balance of $2,705.05. The bank reported this information to the court and suspended activity in the accounts pending a court order.

Kelly then filed a motion to release the two accounts from the levy.[1] He based his motion on Courts and Judicial Proceedings Article ("CJP") § 11-504(b)(5), which permits a judgment debtor under certain circumstances to elect to exempt up to $6,000 in cash or other property from a levy to satisfy a money judgment. After an evidentiary hearing, the Circuit Court for Montgomery County denied Kelly's motion and separately ordered Capital One to pay the account proceeds to the Office.

---

[1] Md. Rule 2-643 states in pertinent part (emphasis added):
Rule 2-643. Release of Property from Levy.

\* \* \* \*

(c) Upon Motion of Judgment Debtor. Upon motion of the judgment debtor, the court may release some or all of the property from a levy if it finds that (1) the judgment has been vacated, has expired, or has been satisfied, (2) *the property is exempt from levy*, . . . .

Kelly has appealed both orders and presents four questions to us. We have

consolidated and reworded them as follows:

>   (1)     Did the trial court correctly interpret the exemption contained in CJP
>           § 11-504(b)(5) to be inapplicable in actions to collect child support
>           arrears?
>
>   (2)     Were the trial court's findings as to the source of the funds in the accounts
>           clearly erroneous?

We will affirm the trial court's judgment.

## Analysis

### 1. Were the account proceeds exempt from garnishment?

### 1.1. The Applicable Rules of Statutory Construction

In resolving the issues in this appeal, we will pay heed to the following guidelines

of statutory interpretation:

> (1) Our purpose is to "ascertain and effectuate the real and actual intent of the
> Legislature." *Employees' Ret. Sys. of City of Baltimore v. Dorsey*, 430 Md. 100,
> 112 (2013);
>
> (2) In this context, "intent" means "the legislative purpose, [that is] the ends to be
> accomplished, or the evils to be remedied" by the statute in question, *id.;*
>
> (3) We usually identify the legislative purpose by considering the plain language
> of the statute "within the context of the statutory scheme to which it belongs,
> considering the purpose, aim, or policy of the Legislature in enacting the statute."
> *State v. Johnson*, 415 Md. 413, 421–22 (2010); and
>
> (4) In the process of discerning the "statutory scheme" to which a particular
> statute belongs, we bear in mind that, laws passed by the General Assembly are
> usually written so that no provision of any statute is superfluous or meaningless.
> *Moore v. State*, 424 Md. 118, 127 (2011).

Finally, "[an] examination of interpretive consequences, either as a comparison of

the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality." *Town of Oxford v. Koste*, 204 Md. App. 578, 586 (2012), *aff'd*, 431 Md. 14 (2013).

### 1.2. Two Statutes and Two Statutory Schemes

The question before us is how to reconcile two apparently conflicting statutes. The first is CJP § 11-504(b)(5).[2] The "statutory scheme" which contains § 11-504 sets out

---

[2]To provide context, we set out § 11-504(b) in full (emphasis added):

**§ 11-504. Items excluded from execution of judgment.**

\* \* \* \*

(b) Items exempt from execution on judgment — The following items are exempt from execution on a judgment:

(1) Wearing apparel, books, tools, instruments, or appliances, in an amount not to exceed $5,000 in value necessary for the practice of any trade or profession except those kept for sale, lease, or barter.

(2) Except as provided in subsection (i) of this section, money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

(3) Professionally prescribed health aids for the debtor or any dependent of the debtor.

(4) The debtor's interest, not to exceed $1,000 in value, in household furnishings, household goods, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for the personal, family, or household use of the debtor or any dependent of the debtor.

(5) *Cash or property of any kind equivalent in value to $6,000 is exempt, if within 30 days from the date of the attachment or the levy by the sheriff, the debtor elects to exempt cash or selected items of property in an amount not to exceed a cumulative value of $6,000.*

(continued...)

3

means by which judgments can be enforced by judgment creditors. Section 11-504(b) lists various exemptions that judgment debtors may exercise to shelter assets from being seized to pay the judgment. Section 11-504(b)(5) states (emphasis added):

> The following items are exempt from execution on a judgment:
>
> . . . .
>
> (5) Cash or property of any kind equivalent in value to $6,000 is exempt, if within 30 days from the date of the attachment or the levy by the sheriff, *the debtor* elects to exempt cash or selected items of property in an amount not to exceed a cumulative value of $6,000.

The second statute is Family Law Article ("FL ") § 10-108.3(b)(1). It provides in pertinent part (emphasis added):

> If *an obligor* [who is more than $500 in arrears in child support payments] has not paid child support for more than 60 days, the Administration may institute an action to attach and seize the amount of the arrearage in one or more of the accounts of *the obligor* with a financial institution to satisfy the amount of arrearage *owed by the obligor*.[3]

Additionally, and of significance to this appeal, FL § 10-108.3(h)(4) permits an

---

2(...continued)
(6) Money payable or paid in accordance with an agreement or court order for child support.

(7) Money payable or paid in accordance with an agreement or court order for alimony to the same extent that wages are exempt from attachment under § 15-601.1(b)(1)(ii) or (2)(i) of the Commercial Law Article.

(8) The debtor's beneficial interest in any trust property that is immune from the claims of the debtor's creditors under § 14.5-511 of the Estates and Trusts Article.

(9) With respect to claims by a separate creditor of a husband or wife, trust property that is immune from the claims of the separate creditors of the husband or wife under § 14.5-511 of the Estates and Trusts Article.

3Kelly concedes that he is such an obligor.

4

obligor to "challenge the [collection] actions of the [Office] based on an exemption in [CJP] § 11-504 . . . or for any other good cause[.]"

Section 10-108.3 inhabits a "statutory scheme" which establishes the Child Support Enforcement Administration and grants to that agency broad powers to collect overdue child support payments. Among other things, Subtitle 10 of the Family Law Article authorizes the Motor Vehicle Administration to suspend the driver's license of persons who are 60 days or more behind in their support obligation (FL § 10-119); authorizes other licensing agencies to suspend licenses for professional occupations for individuals who are 120 days behind in child support payments (FL § 10-119.3); grants the Child Support Enforcement Administration, and its local surrogates such as the Office, the authority to obtain orders withholding up to 25% of salaries and wages in order to satisfy unpaid child support obligations (FL §§ 10-120–138); and criminalizes the wilful failure to pay child support (FL § 10-203). Read together, the provisions of Title 10 of the Family Law Article demonstrate a strong public policy to provide multiple enforcement tools by which child support orders can be enforced. These orders are enforced to "preserve and promote the best interests of the child" for whom support is to be paid (FL § 10-118).

### 1.3. The Parties' Contentions

Kelly's argument is quite simple: he concedes that the Office has the authority to garnish bank accounts but, pointing to FL § 10-108.3(h)(4), he asserts that he is entitled to exempt up to $6,000 of personal property pursuant to CJP § 11-504(b)(5). However,

5

we conclude that the exemption in CJP § 11-504(b)(5) does not apply to efforts to collect unpaid child support payments.

Our conclusion is based on a subtle, but very significant, difference in terminology between CJP § 11-504 and FL § 10-108.3(b)(1). CJP § 11-504(b) permits a "*debtor*" to claim an exemption of up to $6,000. In contrast, FL § 10-108.3 authorizes the Child Support Enforcement Administration to collect unpaid child support from "*obligors*." In the purview of FL § 10-108.3, Kelly is certainly an "obligor." Does this make him a "debtor" for the purposes of CJP § 11-504? The answer to the question is "no." Maryland courts have long distinguished between a "debtor," that is, someone who simply owes money to another, and an "obligor" who must pay money arising out of a separate, and separately enforceable, legal duty.

This principle was first applied in Maryland in *Safe Deposit & Trust Co. v. Robertson*, 192 Md. 653, 662–63 (1949). At issue in that case was whether income generated by a spendthrift trust could be attached to collect unpaid alimony. The Court recognized that income from a spendthrift trust was not subject to attachment for the beneficiary's debts, but the Court drew a distinction between the obligation to pay a debt and the obligation to support a spouse or minor child. The latter obligation "is a *duty*, not a *debt*. . . . We think the rule that gives legal effect to spendthrift provisions as against contract creditors should not be extended to claims for support or alimony." *Id.* (Emphasis added.)

The distinction between an individual's debts—owed to third parties—and his or

6

her duty to support dependent children and spouses has been repeatedly recognized in different legal and factual contexts by the Court of Appeals. *See United States v. Williams*, 279 Md. 673, 678 (1977) (Military retirement pay is not subject to attachment for payment of a debt but is subject to attachment for unpaid alimony because "the underlying obligation is for intra-familial support and the very purpose of the statutory exemptions is to protect a family from being deprived of all support by attachment proceedings brought by an outsider.") (citing Md. Code Ann. (1975, 2013 Repl.) § 15-602 of the Commercial Law Article); *Pope v. Pope*, 283 Md. 531, 537 (1978) (Unemployment benefits are not subject to attachment for payment of a debt but are attachable for payment of alimony because "the legislative purpose underlying such statutes [prohibiting attachment of various benefits] is the protection of the various types of benefits involved from the claims of creditors not from the claim of a former wife for alimony, which often, as in Maryland, is not considered a debt.") (citing what was then Md. Code (1957, 1969 Repl.), Art. 95A, s 16(c); substantively recodified as Md. Code Ann. (1991, 2008 Repl.) § 8-106 of the Labor and Employment Article).[4]

The outcome of most of these cases turned upon the Court's interpretation of

---

[4]Kelly argues that this line of cases—including *Pope*, *Williams*, and *Blum v. Blum*, 295 Md. 135 (1983)—are inapplicable to the present case because all three of those cases pertained to claims for alimony rather than child support. The distinction is not significant. All three cases, although specifically pertaining to alimony, framed their analyses in terms of "intra-familial support," *see Pope*, 283 Md. at 536 ("[T]he underlying obligation is for intra-familial support . . . ."); *Williams*, 279 Md. at 678 (same); *Blum*, 295 Md. at 142 (describing the obligation to provide contractual alimony as a duty to provide intra-familial support). We conclude their holdings are equally applicable to claims for child support.

statutes authorizing or limiting the enforcement of various types of monetary

obligations.[5] In each case, the Court of Appeals distinguished between "debtors" and

"obligors" in the process of construing the statute in question. These decisions lead us to

conclude that, when the General Assembly used the term "debtor" in CJP § 10-504(b)(4),

the Legislature did not intend to permit persons who were obligated to pay child support

to escape their legal duty. *See Pye v. State*, 397 Md. 626, 635 (2007) ("The General

Assembly is presumed to be aware of this Court's interpretation of its enactments and, if

such interpretation is not legislatively overturned, to have acquiesced in that

interpretation.") (internal quotation marks and citation omitted.)

Our interpretation of the subsection is consistent with other provisions of CJP §

11-504(b), which extend protections not only to the debtor but the debtor's family as

well. For example, § 11-504(b)(3) (emphasis added) exempts "[p]rofessionally prescribed

health aids for the debtor *or any dependent of the debtor*[;]" (b)(4) protects up to $1,000

of household items of the debtor *or any dependent of the debtor*; (b)(6) protects money

designated for payment of child support; and (b)(7) protects money designated for

payment of alimony.

Our interpretation of CJP § 11-504(b)(5) is similarly in harmony with FL § 10-

108.3(b)(1). Title 10 of the Family Law Article establishes a broad panoply of collection

---

[5]The exception is *Safe Deposit*, 192 Md. at 658–64, wherein the Court decided, without analysis of statutory authority, that income from a spendthrift trust could be subject to attachment for unpaid alimony.

techniques that are unavailable to those who collect debts, such as suspending drivers'

and professional licenses. Indeed, a court may even incarcerate a recalcitrant obligor for

unpaid child support as part of a contempt proceeding—a remedy that is specifically

denied to those who seek to collect debts.[6] It would be anomalous, to say the least, for the

General Assembly to give the Office such far-reaching powers to collect unpaid child

support from a delinquent parent but to allow that same parent to place $6,000 beyond

the reach of the Office.

Finally, Kelly cites *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins,*

*LLC*, 412 Md. 308 (2010), in support of his argument. *Roseman* specifically pertained to

a child support enforcement action, where the obligor relied on the personal injury

compensation exemption contained in CJP § 11-504(b)(2)[7] to claim that the

---

[6]*See* Maryland Constitution Article III § 38.

No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by statute), shall not constitute a debt within the meaning of this section.

[7]CJP § 11-504(b)(2) states:

The following items are exempt from execution on a judgment:

(2) Except as provided in subsection (i) of this section, money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account

(continued...)

9

Administration could not collect child support arrears from her settlement proceeds from a personal injury action. 412 Md. at 313. In that case, the Court concluded that the reasoning in the *Williams* line of cases did not apply to this exemption, because the exemptions discussed in those cases were enacted to "protect a family from being deprived of all support by attachment proceedings brought by an outsider[,]" while the exemption in CJP § 11-504(b)(2) was enacted to "make the injured person whole." *Rosemann*, 412 Md. at 325. The Court reasoned that the money from the personal injury settlement was "not meant to support directly the injured party's family," but to "pay medical bills and compensate for loss of future earnings and pain and suffering." *Id.* Thus, it concluded that the exemption was applicable to claims for intra-familial support. *Id.* at 326–37.

We do not believe the reasoning in *Rosemann* is applicable to the exemption contained in CJP § 11-504(b)(5) for two reasons. First, the $6,000 exemption in § 11-504(b)(5) is available only to debtors. There is no similar limitation in subsection (b)(2), the provision at issue in *Rosemann*. Second, the General Assembly amended CJP § 11-504(i)[8] in 2011 in response to *Rosemann*, authorizing the execution of up to 25% of a

---

[7](...continued)
> of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

[8]CJP § 11-504(i) states (emphasis added):

(continued...)

10

personal injury award to be applied to child support arrears.

## 2. Substantial Evidence

Kelly presents two arguments concerning the trial court's factual conclusions. We review the court's findings for clear error and give deference to the trial court's opportunity to gauge the credibility of witnesses. *See* Md. Rule 8-131(c).

At the hearing, Kelly testified that he was not employed. The trial court stated that it did not believe his testimony on this issue. We defer to the trial court's credibility assessment.

Kelly also asserts that the funds in the two accounts in question did not entirely belong to him, but were commingled with his mother's funds. It was his burden to prove that all or a portion of the funds in the accounts were his mother's by clear and convincing evidence. *See Morgan Stanley & Co. v. Andrews*, 225 Md. App. 181, 189

---

[8](...continued)
**Net recovery defined**
> (i)(1) In this subsection, "net recovery" means the sum of money to be distributed to the debtor after deduction of attorney's fees, expenses, medical bills, and satisfaction of any liens or subrogation claims arising out of the claims for personal injury, including those arising under:
>> (i) The Medicare Secondary Payer Act, 42 U.S.C. § 1395y;
>> (ii) A program of the Department of Health and Mental Hygiene for which a right of subrogation exists under §§ 15-120 and 15-121.1 of the Health--General Article;
>> (iii) An employee benefit plan subject to the federal Employee Retirement Income Security Act of 1974; or
>> (iv) A health insurance contract.
> (2) *Twenty-five percent of the net recovery by the debtor on a claim for personal injury is subject to execution on a judgment for a child support arrearage.*

(2015). Kelly's evidence on this point consisted of his testimony but the trial court found him not to be a credible witness. Again, we defer to the trial court.

Finally, Kelly argues that the Office withheld "crucial evidence" from the trial court. He does not specify what that evidence was and we will not speculate on the matter.

### 3. Additional Motions

Kelly has filed a motion pursuant to Rule 1-341 to request an award of costs and expenses. Rule 1-341(a) states the circumstances in which this Court may award costs and expenses to a party when the opposing party acted in bad faith or without substantial justification. Normally, this determination is made by the trial court but we can save a step in this case. There is absolutely no basis to impute bad faith to the Office and it certainly acted with substantial justification.[9][10]

> **THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.**

---

[9]Our denial of Kelly's Rule 1-341 motion renders moot his pending motion to defer filing of supporting statements for cost and expense until we have decided his Rule 1-341 motion.

[10]This opinion was originally filed as unreported. However, the Office suggested that it would be in the public interest for the opinion to be reported. We withdraw the original unreported opinion and file this opinion in its stead.