DYSON *v.* PEN MAR CO., INC., ET AL.

[No. 134, October Term, 1949.]

*Decided April 14, 1950,*

*Rehearing denied May 17, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Paul Berman* and *Melvin J. Sykes,* with whom were *Sigmund Levin* and *Theodore B. Berman* on the brief, for the appellant.

*Paul R. Kach,* and *Paul M. Higinbothom* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Joseph Dyson, an illiterate laborer 47 years of age, fell from a freight car and injured his head on August 17, 1945, while working for the Pen Mar Co., Inc. He was paid compensation for temporary total disability up to February 8, 1946, when he returned to work and worked intermittently through that month. His previous work record had been good. Upon his request, a hearing was scheduled for April 11, 1946 to determine the nature and extent of his injuries. On that date Dyson and the attorney for the insurer informed Commissioner Koon that they had agreed to a final compromise and settlement under section 39, Article 101 of the Code, for the sum of $750. An agreement was prepared and executed by the parties, and approved by the Commission on April 23, 1946. Payment of the full amount was made in installments until November 11, 1946. On March 21, 1947 the appellant filed a petition with the Commission to set aside the agreement on the ground of mutual mistake. After hearing, the petition was denied. On appeal to

the Superior Court of Baltimore City, testimony was taken and the case submitted to the court, without a jury, and the court found there was "no mutual mistake under which both parties acted." From a ruling affirming the action of the Commission and a judgment in favor of the appellees for costs, the appeal comes here.

A procedural question is raised as to whether the Commission had any jurisdiction to consider the petition to set aside the agreement of settlement, and, if so, whether its decision is appealable. Section 39, Article 101, of the Code (1947 Supplement) provides: "* * * At any time after a claim for compensation under this Article has been filed with the State Industrial Accident Commission by any claimant, the said claimant * * * may, with the approval of the State Industrial Accident Commission, enter into an agreement with the employer or insurer of such employer providing for a final compromise and settlement of any and all claims which the said employee * * * might then or thereafter have under the provisions of this Article, upon such terms and conditions as the Commission shall, in its discretion, deem proper. Any such settlement when approved by the Commission shall be binding upon all parties thereto, and no such settlement shall be effective unless approved by the Commission". We have not previously had occasion to construe this provision.

An award of compensation is not the pronouncement of a court and not a judgment, but may be enforced by suit as a statutory specialty. *Mattare v. Cunningham,* 148 Md. 309, 314, 129 A. 654. The filing and approval of a final settlement agreement has many of the aspects of an award. While the language quoted does not expressly call the agreement an award, it is included in section 39 which requires the Commission to "make or deny an award" whenever a claim is filed, and it provides that no settlement shall be effective without approval, in which event it becomes binding upon all parties thereto. We note that in the instant case the Commission not only approved the agreement but directed the employer

and insurer to pay the agreed amount at a definite weekly rate, and ordered a payment to the Second Injury Fund "in addition to the above Compensation".

In *Stevenson v. Hill,* 170 Md. 676, 683, 185 A. 551, 554, it was held that the Commission had the power to reopen a case, even for reconsideration of a question previously decided. It was pointed out that Section 54 [now 53] of Article 101 provides that the powers and jurisdiction of the Commission are continuing, and that it may, within the time specified, "make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified." Its powers in this respect are not limited by the provisions of Section 42 to cases of "aggravation, diminution or termination of disability." However, as Judge Urner stated, "with respect to a question which the commission has once determined, none of the parties has a right to require that the case be reopened or to appeal from a refusal to comply with such a demand. * * * A successful application to the commission itself for a reconsideration of its action may be sustainable even though a right of appeal to a court from its refusal to grant the application could not be recognized. There may be adequate reasons why the commission would desire to reconsider a case upon request of a party in interest or on its own motion. The absolute denial of that authority might in some instances interfere with a completely just exercise of the commission's important functions." The Court relied upon the well-reasoned opinion of Chief Judge Bond in *Gold Dust Corporation v. Zabawa,* 159 Md. 644, 152 A. 500, and distinguished *Bethlehem Shipbuilding Co. v. Simmons,* 143 Md. 506, 122 A. 678, where it was held that a refusal to reopen in a case of aggravation was appealable. See also *Howard Contracting Co. v. Yeager,* 184 Md. 503, 505, 41 A. 2d 494.

The appellant contends that these cases are not controlling on the right of appeal because the Commission, in approving the settlement agreement, did not consider the question of mutual mistake and hence that question

was never presented or decided. It is argued that the case should be appealable to the same extent as a refusal to reopen to permit proof of aggravation or diminution under Section 42. We think the argument is unsound. The underlying question as to the compensation to be paid for the injury, by agreement rather than by the determination of a contested issue, was presented and decided. The petition to reopen is not predicated upon a subsequent change of condition, but involves an inquiry into the justice of the approval in the light of conditions existing at the time of the settlement. This would appear to be the very type of inquiry which Judge Urner had in mind in the passage quoted.

It is argued that the refusal of the Commission to set aside the settlement agreement is appealable under the provisions of Section 57 of Article 101, "in the Circuit Court of the county or in the Common Law Courts of Baltimore City * * * and the Court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the Article, and whether it has misconstrued the law and facts applicable in the case decided. * * * Upon the hearing of such an appeal the Court shall, upon motion of either party * * *, submit to a jury any question of fact involved in such case." For a number of reasons we think the latter provision is inapplicable. Insofar as the Commission's approval can be deemed an award, it would seem to fall within the rule of the cases cited. Insofar as the matter of approval or disapproval as to the terms and conditions of the agreement is left to the Commission's discretion, there would be no issue of fact to determine. *Cf. Bonner v. Celanese Corporation*, 195 Md. 9, 72 A. 2d 686; *Allen v. Glenn L. Martin Co.*, 188 Md. 290, 297, 52 A. 2d 605; and *Bethlehem Shipyard v. Damasiewicz*, 187 Md. 474, 481, 483, 50 A. 2d 799. See also *Bethlehem-Sparrows Point Shipyard v. Bishop*, 189 Md. 147, 55 A. 2d 507, 511. Moreover, the ground upon which the Commission was asked to reconsider its approval, mutual mistake of fact,

is one within the historic jurisdiction of equity, not the common-law courts where questions of fact are submitted to a jury or to the court sitting as a jury. *Cf. England v. Universal Finance Co.*, 186 Md. 432, 437, 47 A. 2d 389.

It has been held in some states that resort may be had to equity to set aside settlements approved by an Industrial Accident Commission on equitable grounds. *Perkin's Case*, 278 Mass. 294, 180 N. E. 142; *O'Reilly's Case*, 258 Mass. 205, 154 N. E. 851; *Panozzo v. Ford Motor Co.*, 255 Mich. 149, 237 N. W. 369. But in *U. S. Fidelity & Guaranty Co. v. Taylor*, 136 Md. 545, 110 A. 883, it was clearly stated that the statutory remedy of resort to the Commission was exclusive, although the Court also found that the insurer was barred by negligence in failing seasonably to discover the alleged mistake.

In any event the question of a possible remedy in equity is not before us, and in the absence of a plenary right of appeal, the only jurisdiction that could be invoked in a court of law would be the jurisdiction to review action of the Commission claimed to be arbitrary, capricious, illegal, or unsupported by substantial evidence. *Cf. Bonner v. Celanese Corporation, supra,* and cases cited. We see no reason why the scope of such review may not include a lack of substantial evidence to support a refusal to set aside an award on equitable grounds. The question presented is whether the action of the Commission was arbitrary in this sense.

Dr. Wilkerson, the physician employed by the appellees, found on August 17, 1945 that the claimant's accident resulted in "fracture base of skull. Cerebral concussion". He was unable to state whether the injury would be permanent or how long treatment would be required. He referred the patient to Dr. Freedom, who reported on November 9, 1945, after he had left the hospital, that "in my opinion this man is suffering from a residual cerebral concussion syndrome. He will require treatment for several more months before he is able to return

to work. In the meantime he should be given plenty of sedation and rest." He reported that the patient complained of a roaring in the left ear, some deafness and dizziness, but no pain. He found the left ear perforated. Dr. Looper, an ear specialist, in a report dated April 17, 1946, found that the claimant had sustained a 56 per cent permanent loss of hearing in the left ear. Dr. Wilkerson had also referred the claimant to Dr. Otenasek for a brain and neurological examination; the claimant went to the hospital, but did not see Dr. Otenasek and never returned. Dr. Wilkerson reported on April 17, 1946, that "clinical examination reveals that there are no residual objective findings from the injuries he suffered, except that he has a loss of hearing of 56 per cent in the left ear. It is my opinion that the patient has recovered from the injuries suffered, except for the loss of hearing in the left ear, which, in my opinion, will be permanent in nature."

The report of Dr. Wilkerson, and presumably the other reports in the file, were before Commissioner Koon (himself an experienced physician) at the hearing on the settlement agreement. The Commissioner made it plain to the claimant that if the agreement was approved, the claimant would be forever barred and could not claim additional compensation "whether you get better or worse". The claimant said he still "had a dizzy feeling" and was not working. Nevertheless, he stated that he wanted to settle. Mr. Aubrey, the attorney for the insurer, told the claimant the 56 per cent loss of hearing in his ear was worth about $550, and the $200 in addition was to cover any other claims. The agreement recites "the divergent views held by the respective parties as to the character and scope of said injury". It covered all present and future claims, as permitted by the statute.

At the hearing before the Commission on the petition to reopen, it does not appear from the transcript that counsel for the petitioner produced any evidence except the testimony of the petitioner, consisting principally of statements that he still suffered from dizziness and was

unable to work. He thought his head would get better before the payments ran out, but it had not. The appellees produced Mr. Aubrey and Dr. Wilkerson; the latter reiterated his previous opinion and did not admit any mistake. It is difficult to see how the Commission could have done otherwise than to deny the petition upon this testimony.

The appellant relies strongly upon the testimony of Dr. Rubenstein, a neurologist who examined the claimant on November 21, 1946, who testified at the subsequent hearing in court that the patient had a "traumatic encephalopathy—this means brain damage on the basis of injury—with late post-concussional defects, such as, dizziness and defective sense of smell * * * a probable residuum from his post-concussion." He had an electro-encephalogram taken, which disclosed a "focus of partial inert tissue * * * on the basis of a tumor or scar tissue." He stated that the prognosis was doubtful. It is argued that this finding shows that Dr. Wilkerson's opinion that at the time of settlement the patient had entirely recovered from the injury, except for partial deafness, was clearly in error. It is contended that there was a mistake of diagnosis, not merely one of prognosis, that would justify the setting aside of the settlement and release, citing cases many of which are noted in *Serr v. Biwabik Concrete Aggregate Co.*, 202 Minn. 165, 278 N. W. 355, 177 A. L. R. 1022 and 48 A. L. R. 1464. We find it unnecessary to pass upon this contention.

The evidence produced at the hearing in court could have no bearing on the question whether the Commission's action was arbitrary. *Hyman v. Tyler*, 188 Md. 301, 304, 52 A. 2d 610. We cannot speculate as to what the action of the Commission might have been if Dr. Rubenstein had testified before it, or if Dr. Wilkerson had admitted that his opinion was in error in the light of subsequent objective findings. The right of the Commission to review its previous order of approval does not carry with it a right in a petitioner to trial *de novo* in a court. We have clearly indicated that attempts to

118

by-pass the Commission cannot be tolerated. *Hathcock v. Loftin,* 179 Md. 676, 22 A. 2d 479; *Oxford Cabinet Co. v. Parks,* 179 Md. 680, 683, 22 A. 2d 481; *Benoni v. Bethlehem-Fairfield Shipyard, Inc.,* 188 Md. 306, 309, 52 A. 2d 613.

Since there was substantial evidence to support the Commission's finding of no such mutual mistake as to require the reopening of the case, we shall affirm the judgment below.

*Judgment affirmed, with costs.*