KELLY-SPRINGFIELD TIRE COMPANY ET AL. *v.* ROLAND

[No. 102, October Term, 1950.]

*Decided March 15, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Walter C. Capper* and *Thomas N. Berry,* with whom were *Capper & Jenkins* on the brief, for appellants.

*Edward J. Ryan* and *William L. Wilson, Jr.,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Allegany County affirming a "supplemental award of compensation" by the State Industrial Accident Commission dated November 25, 1949. The award ordered that payments of $20 per week for temporary partial disability, awarded under a previous order dated July 10, 1947, cease as of November 15, 1948, and that compensation for permanent partial disability at the rate of $20 per week, not to exceed $2,500, begin as of November 16, 1948.

The appellee was employed by the Tire Company in August 1944 and worked in its calendar room heating and shaping rubber sheets that had been chemically treated. The fumes appeared to irritate his nose and throat, and finally his lungs. When the company could not find room for him in other operations, he left his employment in February, 1946, and filed his claim on April 22, 1946. Accompanying the claim was a statement from his attending physician that he "seems to have developed a pulmonic sensitivity to rubber fumes, with asthmatic manifestations," which "incapacitates him for this type of work". The claim was referred to the Medical Board for Occupational Diseases, where extensive testimony was taken. On the first issue raised by the employer and insurer, whether the claimant had contracted an occupational disease while in the employ of the Tire Company, the Medical Board found for the claimant. On the second and third issues it found that the claimant suffered temporary partial disability from February 15, 1946, and that the employer had timely notice. On the fourth issue, whether the alleged occupational disease was "due to the nature of an employ-

ment in which the hazards of such disease actually exist, are characteristic of and peculiar to the trade, occupation, process or employment", the Board found: "It is unlikely that the occupational disease suffered by the claimant is commonly encountered in the operation in which he was engaged. On the other hand, it is likely that he has become sensitized to some material to which he was exposed." On appeal to the Commission by the employer and insurer, the Commission found for the claimant on all four issues, and on July 10, 1947 made an award of temporary partial disability from February 18, 1946 at the rate of $20 per week. No appeal was taken from this award.

On September 15, 1948 the appellee requested a hearing before the Commission on the following issues: "1. Is the claimant permanently disabled? 2. What is the per cent of permanent disability with which the claimant is suffering?" The matter was referred to the Medical Board for hearing. Over objection, the employer and insurer raised a third issue as to whether the claimant was "disabled to any extent by reason of suffering from an occupational disease claimed to have been incurred in the course of his employment." After hearing further testimony, on January 14, 1949 the Board found that the claimant was permanently partially incapacitated to the extent of 50%, and "this incapacitation is the result of an occupational disease." The appellant appealed to the Commission, but the matter was again referred to the Medical Board to ascertain the date when permanent partial disability began. On August 17, 1949, the Board found that permanent partial disability began on November 16, 1948. Appeal was noted from this order. Upon hearing, the Commission affirmed the findings of the Medical Board and passed the order of November 25, 1949. Appeal was duly taken to the Circuit Court, where the order was affirmed, and to this court. The appellants contend that there was no evidence before the Commission to support a finding that the claimant had

contracted an occupational disease compensable under the Workmen's Compensation Act.

The appellee contends in his brief that the appellants had no right to raise the third issue before the Medical Board, on the ground that the order passed on July 10, 1947 was a final award. Section 53, Article 101, Code (1947 Supp.) provides that that " the powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto' as in its opinion may be justified; provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within three years next following the last final award of compensation, but no award shall be considered a final award under this section unless it shall have been so designated on the award by the Commission. In cases where no final award shall have been made by the Commission, but an award not designated as a final award shall have been made by the Commission, no additional award or awards of compensation shall be made by the Commission unless application therefor be made to the Commission within three years next following the last payment of compensation under such award or awards not designated by the Commission as final. However, in all occupational disease cases application to the Commission for a modification or change in any final award must be made within one year thereafter." It also provides that no final award shall be passed except after a hearing or by consent. In *Porter v. Bethlehem-Fairfield Shipyard,* 188 Md. 668, 53 A. 2d 668, 670, we held in a case of accidental injury that an award of temporary total disability payable "during the continuance of" such disability, not designated as final and upon which no hearing had been held, was not a final award within the meaning of this section. The employer and insurer could not rely upon the clause dealing with awards not designated as final, because payments

for temporary total disability under a supplemental award not appealed from by the employer and insurer, were still due and unpaid. Since neither of the three-year limitation clauses applied, we held that the claimant was entitled to have the Commission determine the nature and extent of his disability, and that there was no substantial evidence to support the Commission's finding that there was no permanent partial disability. In the case at bar it is equally clear that the initial award was not designated as final, so that the one year limitation does not apply. Likewise, the three-year limitation as to awards not designated as final does not apply, because the application was made within that period and it is admitted that payments under the initial award were still being made as late as June, 1949.

The appellee seems to contend, however, that although he is not barred by limitations, he can limit the scope of the inquiry to the extent or duration of disability, without reference to the basic question as to whether he is suffering from a compensable occupational disease. In other words, the real contention seems to be that that issue was conclusively determined by the first award, from which there was no appeal. In *Gold Dust Corp. v. Zabawa*, 159 Md. 664, 152 A. 500, we held that an appeal would not lie from a refusal to reopen a claim which had previously been denied, and no appeal taken from the denial. At the time of that decision there were no limitation clauses in the section. But in *Stevenson v. Hill*, 170 Md. 676, 185 A. 551, where the Commission reopened a case within the period of limitations to redetermine the amount of average weekly wage, we held that the question was reviewable on appeal, although as a result of the hearing a new order was passed for the same amount as the previous award. Discussing the *Zabawa* case, it was said, 170 Md. at page 683, 185 A. at page 554: "with respect to a question which the commission has once determined, none of the parties has a right to require that the case be reopened or to appeal from a refusal to comply with such a demand. But when the

commission grants a request that a case be reopened, the question as to its power so to act is not governed by the same considerations as those which prevent an appeal from its refusal to order a rehearing upon an issue already determined. A successful application to the commission itself for a reconsideration of its action may be sustainable even though a right of appeal to a court from its refusal to grant the application could not be recognized. * * * That section [54 now 53] was regarded in the *Zabawa* case as conferring 'a power to reopen,' although its refusal to exercise the power was not subject to appellate review." Cf. *Saf-T-Cab Service Co. v. Terry,* 167 Md. 46, 172 A. 608, and *Dyson v. Pen-Mar Co.,* 195 Md. 107, 113, 73 A. 2d 4, 5.

We think the ruling in the *Zabawa* case must be confined to cases where the Commission declines to grant a rehearing. In the case at bar, the question whether the claimant was suffering from a compensable occupational disease was raised by the employer and insurer before the Medical Board and decided by it. This finding was assigned as a ground of error in the appeal to the Commission, and in its supplemental award the Commission found that the claimant sustained a * * * "permanent partial disability resulting from the occupational disease incurred in the course of his employment." While the appellee did not seek to reopen the prior decision, but merely to conclude the open claim of temporary partial disability and establish a further claim of permanent partial disability, the latter claim, at least, depended upon a finding of liability which was challenged by the appellants. The previous award was not annulled but it was modified and amplified by the supplemental award. We think the case falls within the rule of the *Stevenson* case, and the Commission's award is reviewable.

It was suggested in argument that the asthmatic condition from which the claimant suffers is not an occupational disease within the meaning of the Act. Not all such diseases are covered by the Act, but only those specified in section 21, Article 101, Code (1947 Supp.).

We may assume, without deciding, that at least some respiratory disorders, such as those "due to contact with antigenic substances" in a "process or occupation involving exposure to antigenic substances which give rise to manifestations of sensitivity other than contact dermatitis", as specified in section 21(35), are covered. But there is a further limitation upon the right to compensation in Section 23, which provides: "An employer shall not be liable for any compensation for an occupational disease unless such disease shall be due to the nature of an employment in which the hazards of such disease actually exist[s], are characteristic of and peculiar to the trade, occupation, process, or employment, and is actually incurred in his employment * * *." For a discussion of the legislative history and probable origin of this provision, see *Shriver, The Maryland Occupational Disease Law,* 4 Md. L. R. 133, 147.

At the first hearing in 1947, the Medical Board did not squarely answer the fourth issue raised on this point but stated: "It is unlikely that the occupational disease suffered by the claimant is commonly encountered in the operation in which he was engaged." At the second hearing in 1948, the additional testimony showed without contradiction that asthma had never been known to occur as a result of the operation in which the claimant was engaged, either by the Kelly-Springfield Tire Company, or by the Goodyear Tire and Rubber Company in its plant at Akron, Ohio. The Board stated that under such working conditions "asthma is rare" but "he had become occupationally sensitized there and that asthma had resulted". This seems to fall short of a finding that that the disease was characteristic of and peculiar to the operation. The Commission, of course, heard the case on the record without other testimony. As we pointed out in *Bethlehem-Sparrows Pt. Shipyard v. Bishop,* 189 Md. 147, 154, 55 A. 2d 507, 511, "The Commission has the power to review findings of the Medical Board. Finality, in so far as the legislature can make final the decision of an administrative tribunal,

362

attaches to the decision of the Commission, not to the decision of the Medical Board". The finality with respect to appeals under Section 57 extends only to findings of fact, and it would appear that both the Medical Board and the Commission either misconstrued the legal effect of the limitation in Section 23, or made a finding that had no substantial evidence to support it. As the trial court observed, "nowhere have I found any evidence that asthma was a hazard, characteristic and peculiar to his occupation. There is much evidence that it is not." The affirmance was based solely upon the ground that the issue was no longer open. Since we differ with the trial court on that point, the order must be reversed and the Commission's award for permanent partial disability must be disallowed. The reversal of the order does not, however, affect the award for temporary partial disability down to the closing date, which the appellants do not challenge.

*Order reversed, with costs.*