JOHNSTOWN COAL AND COKE COMPANY *v.* DISHONG ET AL.

DISHONG *v.* DAVIS COAL AND COKE COMPANY

[No. 24, October Term, 1951.]

*Decided December 5, 1951.*

*Rehearing denied January 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*William A. Gunter* for Johnstown Coal and Coke Company, appellant.

*Clarence Lippel* for Charles L. Dishong, appellee and cross-appellant.

*Theodore C. Waters, Jr.,* with whom were *Theodore C. Waters* and *Mullikin, Stockbridge & Waters* on the brief, for The Davis Coal and Coke Company, appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is a claim for Workmen's compensation for permanent total disability resulting from silicosis arising out of and in the course of employment. The claim was filed by Charles L. Dishong, a coal miner, against Davis Coal and Coke Company, of Tucker, West Virginia, and Johnstown Coal and Coke Company, of Vindex, Maryland.

Claimant started to work for Davis in 1917 at the age of sixteen. During the next 28 years he was employed most of the time in the Davis mines, first in West Virginia and afterwards at Kempton, Garrett County, as coal loader, later as motor brakeman, and finally as motorman. He left the employ of Davis on February 17, 1945.

Claimant started to work for Johnstown as a coal loader in the mine near Vindex on March 3, 1945. He

noticed shortness of breath and pains in his chest for the first time in 1947, but he continued to work for Johnstown until June 10, 1949, when difficulty in breathing forced him to quit. He consulted his physician in March, 1950, and, after X-ray films were made, his physician advised him for the first time early in May that he had silicosis. He notified both Davis and Johnstown of the diagnosis on May 9, and filed his claim with the State Industrial Accident Commission on May 10.

It was shown before the Medical Board that claimant came in contact with both coal dust and sand dust while in the employ of Davis, and that while in the employ of Johnstown he came in contact with sand dust only a few minutes each day when he passed along the haulage way. The Medical Board found that claimant had contracted silicosis while in the employ of Davis, but that it was possible that further developments of the disease may have occurred as a result of his exposure to sand dust while in the employ of Johnstown. On January 9, 1951, the Commission passed an order dismissing the claim against Davis, and ordering Johnstown to pay claimant compensation at the rate of $28 per week, beginning June 14, 1949, not to exceed $6,500.

Johnstown appealed from that award, but it was affirmed by the Circuit Court for Garrett County. Johnstown then appealed to this Court. Claimant also appealed in order to bring before us the claim against Davis.

Prior to June 1, 1951, the Workmen's Compensation Act provided that an employer should not be liable for any compensation for silicosis or asbestosis unless disablement or death resulted "within three (3) years * * * after the last injurious exposure to such disease in such employment * * *." Code Supp. 1947, art. 101, sec. 23. In 1951 the Legislature amended this section by providing that when disability or death of an employee shall be due to silicosis, asbestosis, or other pulmonary dust disease, the employer shall be liable for compensation, provided that such disability or death shall occur "within five (5) years after the employee shall be found

to be affected by silicosis, asbestosis, or other pulmonary dust disease." Laws of 1951, ch. 290.

It is perfectly clear that the Act of 1951 does not apply to the claim against Davis, the first employer, for the Commission heard and dismissed that claim prior to June 1, 1951. That claim was barred by the three-year limitation statute, inasmuch as claimant did not become disabled until June, 1949, more than four years after his last injurious exposure to silicosis while in the employ of Davis.

We turn now to the appeal of Johnstown, the last employer. Another provision of Section 23, which has been substantially re-enacted by Chapter 290 of the Laws of 1951, directs that where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease shall be liable therefor; provided, however, that in case of silicosis or asbestosis the only employer liable shall be "the last employer in whose employment the employee was last injuriously exposed to the hazards of the disease during a period of sixty (60) days or more * * *."

It is undisputed that Johnstown was claimant's last employer during a peroid of four years and three months, or more than 25 times longer than the minimum period fixed by the Act to create liability of the employer. Johnstown, however, contends that claimant was not "injuriously exposed" to the hazards of silicosis while in its employ.

In any hearing held by the State Industrial Accident Commission to determine any controversial question in any case involving an occupational disease, no finding of fact by the Commission shall be subject to be reviewed or set aside, reversed or modified; but the findings of fact by the Commission shall be final and not subject to review or modification by the Court or be submitted to a jury. Code Supp. 1947, art. 101, secs. 29, 57; *Bethlehem-Sparrows Point Shipyard v. Bishop,* 189 Md. 147,

55 A. 2d 507; *Kelly-Springfield Tire Co. v. Roland,* 197 Md. 354, 79 A. 2d 153.

The provision for finality of the findings of the Commission is designed to promote expeditious investigation and adjudication of claims filed by employees suffering from occupational diseases. The object of the Workmen's Compensation Act is to furnish a prompt, continuous and expert method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task. By giving finality to the findings of the Commission, the Legislature aimed to avoid contests and delays for disabled employees. The efficiency of the system depends largely upon the finality of the determinations of fact in respect to the circumstances of the contraction of the occupational disease, and the nature, extent and consequences of the disease. The law is settled that such questions of fact may be finally determined by an administrative agency. In asserting this principle in Federal compensation proceedings, Chief Justice Hughes said: "The use of the administrative method for these purposes, assuming due notice, proper opportunity to be heard, and that findings are based upon evidence, falls easily within the principle of the decisions sustaining similar procedure against objections under the due process clauses of the Fifth and Fourteenth Amendments." *Crowell v. Benson,* 285 U. S. 22, 52 S. Ct. 285, 291, 76 L. Ed. 598.

While the Workmen's Compensation Act directs that findings of fact by the Commission in any case involving an occupational disease are final and cannot be set aside, reversed or modified on appeal, this provision cannot override the basic principle that the Legislature cannot divest the courts of their inherent power to review the actions of administrative agencies which are illegal, arbitrary, or unreasonable and which impair personal or property rights. There is an implied limitation upon the authority of the State Industrial Accident Commission that its findings shall be supported by legally suffi-

cient evidence, for a finding unsupported by any evidence is beyond the power of an administrative agency as a denial of due process of law. *Heaps v. Cobb,* 185 Md. 372, 379, 380, 45 A. 2d 73.

As this Court, speaking through Judge Offutt, said in *Moore v. Clarke,* 171 Md. 39, 45, 187 A. 887, 890, 107 A. L. R. 924, 929, whether there is evidence legally sufficient to support the decision of the Industrial Accident Commission in any case is necessarily a question of law to be decided by the court. The decision of the Commission, under the authority conferred upon it by statute in cases involving occupational diseases, is conclusive in the field of inferences from evidentiary facts, unless it appears that there is no reasonable basis for its conclusions and therefore the decision exceeds its power. *Van Domelon v. Town of Vanden Broeck,* 212 Wis. 22, 249 N. W. 60, 92 A. L. R. 501.

In the instant case it was shown that claimant worked for Johnstown for four years and three months, and every day he worked during that period he was in contact with sand dust for a few minutes as he passed along the haulage way to and from work. The Medical Board, after a thorough study of the case, reached the conclusion that claimant had been injuriously exposed to silicosis during the period of his employment by Johnstown. The Board stated that, while the exposure to the sand dust was "minimal," it could not be said to be "non-existent." It is a general rule that in the absence of evidence to the contrary, administrative officers will be presumed to have properly performed their duties and to have acted regularly and in a lawful manner. All legal intendments are in favor of the administrative decision, and it will be presumed to be correct and valid, if all parties have been given a reasonable opportunity to be heard.

This general rule is applied when decisions of the State Industrial Accident Commission are challenged in the courts. It applies with particular force in this case, where the Commission based its decision upon the find-

ings of the Medical Board. The Legislature has sought to make certain that the members of the Medical Board are experts on occupational diseases. The Board is composed of three physicians appointed by the Governor with the consent of the Senate from a list of nominees submitted by the Dean of the Medical School of the University of Maryland, the Dean of the Medical School of the Johns Hopkins University, and the Council of the Medical and Chirurgical Faculty of Maryland. By mandate of the Legislature, two of the members of the Board must have at least 5 years of experience in the diagnosis, treatment and care of industrial diseases, and one must be trained in roentgenology and must have at least 5 years of practice and experience. Code Supp. 1947, art. 101, sec. 27.

We find no reason to contradict the Medical Board and the State Industrial Accident Commission in their opinion that the inhalation of sand dust during a period of four years and three months, even though only for a short time each day, constitutes an injurious exposure to the hazards of silicosis. It is a fair inference that claimant was injuriously exposed to the hazards of the disease, inasmuch as his lungs had previously been "loaded" by exposure to sand dust for 28 years, and his contact with sand dust every work day during a period of 51 months might have aggravated the latent disease with which he was afflicted. We must recognize the fact that silicosis is a pneumoconiosis, for the development of which the inhalation of particles of silicon dioxide is necessary over a long period of time. Usually it is not until after an exposure of about fifteen years to the sand dust, when sufficient lung has been destroyed, that symptoms of air deficiency appear with shortness of breath upon exertion. As the disease progresses to an extreme degree, even slight exertion brings about more severe attacks of breathlessness, and manual labor is then difficult. Finally no work at all may be performed, resistance to infection is decreased, and usually some

476

other disease, such as tuberculosis or pneumonia, is the cause of death.

We add that this Court has no authority to set aside an award of the Commission merely because the Court might weigh or appraise the evidence differently. Where the findings of the Commission are supported by inferences which may be fairly drawn from the evidence, even though the evidence may be susceptible of opposing inferences, the Court will not reject those findings. *Harvey Coal Corporation v. Pappas,* 230 Ky. 108, 18 S. W. 2d 958, 73 A. L. R. 473; *Hartford Accident & Indemnity Co. v. Industrial Accident Commission of California,* 202 Cal. 688, 262 P. 309, 58 A. L. R. 1392.

For these reasons we conclude that there was legally sufficient evidence to support the decision of the Commission. The order of the Circuit Court affirming that decision must therefore be affirmed.

*Order affirmed, with costs.*