**HEADNOTE:**     *R.K. Grounds Care v. Wilson*, No. 1452, September 2016 Term.

**WORKERS' COMPENSATION COMMISSION — SUBJECT MATTER JURISDICTION — GARNISHMENT EXEMPTIONS.**

Wilson and his employer and insurer entered into a settlement of his worker's compensation claim, which was approved by the Commission. When the settlement funds were in the hands of the insurer, the insurer was notified of child support liens against Wilson and then was served with writs of garnishment. The child support judgments exceeded the amount of Wilson's share of the settlement. The insurer answered the garnishment proceeding. Wilson did not file anything in the garnishment proceeding. The insurer paid Wilson's share of the settlement to the local child support enforcement agency, which was the judgment creditor in the garnishment proceeding.

A few months later, Wilson filed "Issues" in the Commission, complaining that the insurer had not paid him his share of the settlement. The parties put before the Commission the question whether Wilson's share was exempt from garnishment under section 11-504(b) of the Courts and Judicial Proceedings Article (CJ). The Commission ruled that the share was partially exempt. RK filed an action for judicial review. The circuit court also addressed the exemption question, ruling that Wilson's share was partially exempt (but by a different amount) and directing that the insurer was to pay Wilson the non-exempt portion of his share, notwithstanding that it already had paid his full share to the judgment creditor in the child support cases. RK noted an appeal.

*Held*: Judgment of the circuit court reversed. The circuit court should have ruled that the Commission lacked subject matter jurisdiction to decide whether money that was in the hands of an insurer for settlement of a workers' compensation claim was exempt from garnishment to pay a judgment in a child support action. Only a circuit court has subject matter jurisdiction over garnishments. In the child support garnishment proceeding, Wilson, as judgment debtor, was entitled to file a motion asking the court to find that his share of the settlement monies (or part of his share) was exempt from garnishment under CJ section 11-504. He failed to do so. Instead, he sought relief from the Commission, which did not have jurisdiction over the matter.

Circuit Court for Carroll County
Case No. 06-C-15-069437

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1452

September Term, 2016

_____

R. K. GROUNDS CARE, ET AL.

v.

KEVIN D. WILSON

_____

Eyler, Deborah S.,
Meredith,
Arthur,

JJ.

_____

Opinion by Eyler, Deborah S., J.

_____

Filed: December 4, 2017

In this appeal, we hold that the Workers' Compensation Commission ("Commission") does not have jurisdiction to decide whether money payable in an approved settlement of a claim is subject to garnishment.

## FACTS AND PROCEEDINGS

After suffering an injury at work on December 14, 2012, Kevin D. Wilson, the appellee, brought a workers' compensation claim against his employer, R.K. Grounds Care ("RK"), and RK's insurer, Chesapeake Employers Insurance Company ("Chesapeake"), the appellants. On March 14, 2014, the parties agreed to settle the claim for $3,500, which included an attorneys' fee and a medical evaluation fee. The settlement was memorialized in an "Agreement of Final Compromise and Settlement" ("Agreement"), which was submitted to the Commission for approval. On March 20, 2014, the Commission issued an order approving the settlement with one small change that is of no consequence to this appeal.

At the time of all these events, three child support arrearage cases were pending against Wilson in the Circuit Court for Carroll County.[1] On March 31, 2014, in that court, the Carroll County Bureau of Support Enforcement ("Bureau") filed a "Notice of Child Support Lien" in each child support case, for a total of $ 6,691.69 in child support arrears. As we shall discuss, the child support liens operated as judgments. RK and Chesapeake were notified of the child support liens that same day.

---

[1] Two of the cases pertained to one child and the other pertained to a second child, by a different mother. Wilson also has a child by his wife in his present marriage.

On April 2, 2014, Chesapeake paid the attorneys' fee and medical evaluation fee due under the Agreement. The $2,246.66 balance of the settlement money, *i.e.*, Wilson's share, was far less than his child support arrearage. Chesapeake advised Wilson's lawyer by email that day that "claimant has a child support lien so his portion is not being sent out." Two days later, it further advised Wilson's lawyer that it was awaiting receipt of writs of garnishment and was planning to send all of Wilson's share of the settlement to the Bureau. By email of May 6, 2014, Wilson's counsel informed Chesapeake that, in his view, the Bureau was not entitled to receive the full amount of Wilson's share of the settlement.

On July 2, 2014, the Circuit Court for Carroll County issued writs of garnishment in two of the child support cases, and, on July 8, 2014, it issued a writ of garnishment in the third case. The writs were served on Chesapeake as garnishee and mailed to Wilson as judgment debtor. Wilson did not file a motion (or any paper) in the garnishment proceedings. On August 5, 2014, Chesapeake issued three checks to the Bureau, judgment creditor, for sums totaling the full amount of Wilson's share of the settlement.[2] On August 14, 2014, Chesapeake filed answers in all three child support cases. Based on the payments made by Chesapeake, the judgments for child support arrearages in two cases were marked partially satisfied and the judgment in the third case was marked fully satisfied.

---

[2] A check was issued for payment in each of the pending child support cases.

More than three months later, on November 26, 2014, Wilson filed an "Issues" form with the Commission stating, "COMMISSION APPROVED THE AGREEMENT OF FINAL COMPROMISE AND SETTLEMENT ON 3/18/14, BUT THE CLAIMANT IS STILL AWAITING RECEIPT OF HIS SHARE OF SETTLEMENT PROCEEDS."

On April 29, 2015, the Commission held a hearing, which consisted of argument of counsel. Wilson took the position that his share of the settlement money was exempt from garnishment, under Md. Code (1974, 2013 Repl. Vol.), section 11-504 of the Courts and Judicial Proceedings Article ("CJP"), and therefore Chesapeake should have paid it to him, not to the Bureau. RK and Chesapeake argued that that exemption did not apply. On July 6, 2015, the Commission issued a final order finding that CJP section 11-504(b)(2) applied to exempt Wilson's share from garnishment but that an exception in CJP section 11-504(i)(2) also applied. The Commission determined that, under the exception, 75% of Wilson's share of the settlement money had been subject to garnishment; therefore, Chesapeake should have paid Wilson $421.99 of his share. It further found that the Bureau had $529 in escrow, and that the $421.99 should be paid by the Bureau to Wilson. It ordered, however, "that in the event no monies remain in escrow, that [RK and Chesapeake] be responsible for paying the amount due [$421.99] to [Wilson]."[3]

---

[3] Wilson had sought penalties and attorneys' fees, which the Commission declined to award. No argument is being made concerning that ruling on appeal.

3

Unhappy with that outcome, RK and Chesapeake filed a petition for judicial review of the Commission's final order in the Circuit Court for Carroll County. The parties stipulated to the material facts and asked the court to render a decision based on the law.

After a hearing, the court issued a memorandum opinion ruling that workers' compensation settlements are subject to garnishment under Title 10 of the Family Law Article; that garnishments under that title are limited by CJP section 11-504(b)(2); that CJP section 11-504(b)(2) applied; and that pursuant to CJP section 11-504(i)(2), 25% of Wilson's share of the settlement funds could be garnished. In an accompanying order, the court affirmed in part and reversed in part the final order of the Commission; determined that Wilson was entitled to $1,684.99 (75% of his share of the settlement money); and ordered that "notwithstanding any prior payments which may have been made to the [Bureau], [RK] and [Chesapeake] are responsible for making" the $1,684.99 payment to Wilson.

RK and Chesapeake noted this timely appeal, presenting three questions for review, which we have consolidated and reworded:

I. Did the circuit court err by ruling that CJP section 11-504(b)(2) applied to Wilson's share of the settlement?

II. If not, did the circuit court err by ruling that under CJP section 11-504(i), 25% of Wilson's share of the settlement was subject to garnishment for unpaid child support?[4]

---

[4] RK and Chesapeake frame their questions presented as follows:

4

We shall not address either question because, as stated above, we conclude that the Commission lacked subject matter jurisdiction to decide whether Wilson's share of the settlement money (or any part of that share) was exempt from garnishment. For that reason, we shall reverse the judgment of the circuit court.

**DISCUSSION**

Before delving into the jurisdictional problem that we see as dispositive, we shall summarize the primary issues the parties present in their briefs, for context. They concern the proper interpretation of three interrelated statutes and statutory schemes that serve varying policy purposes. First, Md. Code (1999, 2008 Repl. Vol.), section 9-732 of

---

…cont'd

I.    Whether the Circuit Court erred in failing to apply Maryland Code, Labor and Employment Article, § 9-732 instead of Maryland Code, Courts and Judicial Proceedings Article, § 11-504(b) regarding the effect of child support garnishments on workers' compensation benefits?

II.   Whether the Circuit [sic] erred in finding that a workers' compensation claim is a personal injury, accident or sickness as defined or intended under Maryland Code, Courts and Judicial Proceedings Article, § 11-504(b)?

III.  Whether the Circuit Court erred in finding that Maryland Code, Courts and Judicial Proceedings Article, § 11-504(b)(2) and 11-504(i)(2) limits a child support garnishment to an aggregate total of 25% when there are multiple children and/or multiple garnishment orders?

5

the Labor & Employment Article ("LE"), a provision of the Maryland Workers' Compensation Act ("Act"), states:

> *Except as provided in Title 10 of the Family Law Article*, before the issuance and delivery of a check or draft for any money payable under this title, the money may not be assigned, charged, or taken in attachment or execution.

(Emphasis added.) Thus, as a general rule, money payable pursuant to the Workers' Compensation Act is protected from garnishment except as provided in Md. Code (1999, 2012 Repl. Vol., 2015 Cum. Supp.), §§ 10-101 *et seq.* of the Family Law Article ("FL") ("FL Title 10"), entitled "Support in General."

Second, subtitle 1 of FL Title 10, entitled "Civil and Criminal Enforcement," establishes the Child Support Enforcement Administration ("Administration") and grants it and its local surrogates, such as the Bureau, "broad powers to collect overdue child support payments." *Kelly v. Montgomery Cty. Office of Child Support Enforcement*, 227 Md. App. 106, 111 (2016).[5]    Pursuant to FL section 10-140(a)(1), "[u]npaid child support due under an order requiring payments through a support enforcement agency, [such as the Bureau,] constitutes a lien in favor of the obligee on all real and personal property of the obligor." The child support lien may be enforced by filing a notice of lien with the clerk of a circuit court. FL § 10-141(a). Once that is done, the child support lien

---

[5] The panoply of tools available to the Administration to recover child support arrearages includes driver's license suspension (FL § 10-119), professional license suspensions (FL § 10-119.3), interception of state income tax refunds (FL § 10-113), and interception of lottery prize money (FL § 10-113.1).

"has the full force and effect of a judgment lien[,]" FL section 10-141(c)(1), and "may be enforced in accordance with the Maryland Rules," FL section 10-141(c)(2). Among other enforcement mechanisms, the Maryland Rules allow for the garnishment of property. *See* Md. Rule 2-645.

Finally, CJP section 11-504 is one of several laws the General Assembly has enacted to carry out the Maryland constitution's mandate "to protect from execution a reasonable amount of the property of the debtor." Md. Const. art. 3, § 44. In particular, CJP section 11-504(b)(2) provides:

> (b) The following items are exempt from execution on a judgment:
> . . .
> (2) *Except as provided in subsection (i) of this section*, money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief.

(Emphasis added.) The referenced exception states, in relevant part: "[t]wenty-five percent of the net recovery by the debtor on a claim for personal injury is subject to execution on a judgment for a child support arrearage." CJP § 11-504(i)(2). That exception was enacted in 2011, in reaction to *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC*, 412 Md. 308 (2010). In that case, the Court of Appeals held that, under CJP section 11-504(b)(2), settlement money obtained by a personal injury plaintiff and deposited in her lawyers' trust account was completely exempt from garnishment for judgments against her for unpaid child support.

7

As the parties see it, the central issue on appeal is whether Wilson's share of his workers' compensation settlement money, which was in the hands of Chesapeake and was payable to him, was fully exempt, partially exempt, or not exempt from garnishment by the Bureau. RK and Chesapeake acknowledge that under LE section 9-732, generally, workers' compensation payments cannot be executed against, but that enforcement mechanisms in FL Title 10 are exceptions to that general prohibition. And, although CJP section 11-504(b)(2) can provide exemptions from execution for child support arrearages, as *Rosemann* made clear, RK and Chesapeake maintain that the money payable in settlement of a workers' compensation claim is not "money payable in the event of . . . injury" within the meaning of that exemption. Therefore, CJP section 11-504(b)(2) does not protect money payable as a workers' compensation settlement that is in the hands of a third party from being garnished to pay a judgment for child support arrears. They maintain that the circuit court erred as a matter of law in ruling otherwise. Wilson counters that this argument ignores the plain language of CJP section 11-504(b)(2), and the circuit court's ruling in this regard was correct.

These arguments are well thought-out and present difficult legal questions. As we shall explain, however, only a circuit court has subject matter jurisdiction over garnishment proceedings, including the power to decide whether property is exempt from garnishment. Wilson did not raise the exemption question before the circuit court in the garnishment proceeding in the child support cases when he had the opportunity to do so. He raised it before the Commission, which had no power to decide it.

8

"A writ of garnishment is a means of enforcing a judgment. It allows a judgment creditor to recover property owned by the debtor but held by a third party." *Parkville Fed. Sav. Bank v. Maryland Nat'l Bank*, 343 Md. 412, 413 (1996). In a garnishment proceeding to enforce a judgment, the judgment creditor "steps into the shoes of the [judgment] debtor and ordinarily can only recover to the same extent as could the [judgment] debtor." *Bragunier Masonry, Inc. v. Catholic Univ. of America*, 368 Md. 608, 624 (2002). Therefore, "garnishment proceedings are not designed or intended 'to place the garnishee in a worse position, in reference to the rights and credits attached, than if he had been sued by the defendant [judgment debtor].'" *Med. Mut. Liab. Ins. Soc. of Maryland v. Davis*, 389 Md. 95, 103 (2005) (quoting *Bragunier*, 368 Md. at 624). In this case, with respect to the settlement money payable to Wilson but in the hands of Chesapeake, the Bureau, as a judgment creditor of Wilson, stood in the same shoes as Wilson.

The procedure governing garnishment of property generally is set forth in Rule 2-645.[6] The judgment creditor may obtain a writ of garnishment by filing a request in the same action in which the judgment was entered. Md. Rule 2-645(b). The clerk of court issues the writ, directed to the garnishee, and containing all the information in the request. Md. Rule 2-645(c). Among other things, the writ directs the garnishee to hold the property of the judgment debtor and, significantly, notifies the judgment debtor "that

---

[6] This rule covers garnishments of any property other than wages and partnership interests subject to a charging order. Md. Rule 2-645(a).

9

federal and state exemptions may be available" and "of the right to contest the garnishment by filing a motion asserting a defense or objection." Md. Rule 2-645(c). The writ must be served upon the garnishee, and, once served, must be mailed to the judgment debtor at his or her last known address. Md. Rule 2-645(d). The garnishee must file a timely answer, or risk entry of a judgment of default. Md. Rule 2-645(e) and (f).

Within 30 days after service on the garnishee, and before entry of any judgment, the judgment debtor "may seek release of the garnished property in accordance with Rule 2-643." Md. Rule 2-645(i). One of the grounds for a motion to release property under Rule 2-643 is "the property is exempt from levy[.]" Md. Rule 2-643(c)(2). Thus, in the case at bar, upon receipt of the writ of garnishment, Wilson, as judgment debtor, was entitled to file a motion challenging the garnishment on the ground that the money held by Chesapeake as his share of the settlement and payable to him was exempt from garnishment under CJP section 11-504(b)(2). An exemption would not apply automatically; he had to take action in the garnishment proceedings to seek an exemption he believed was applicable. He did not do so. Instead, he waited until the garnishment proceedings were over and then filed "Issues" with the Commission, complaining that the settlement monies had not been paid to him. As noted, in argument before the Commission, he maintained that the money paid by Chesapeake in answer to the garnishment proceedings had been exempt from garnishment under CJP section 11-504(b)(2).

10

"Attachment and garnishment is the exercise of a special and limited statutory power, the requisites of which are jurisdictional." *Cole v. Randall Park Holding Co.*, 201 Md. 616, 623 (1953). *See also Davis*, 389 Md. at 101 (same); *Belcher v. Gov't Emp. Ins. Co.*, 282 Md. 718, 720 (1978) ("[T]he court's authority in attachment proceedings is derived from a 'special and limited statutory power[.]'" (quoting *Cole, supra*)). As relevant here, the court's special power derives from CJP section 3-305. That statute, codified in Title 3, "Courts of General Jurisdiction – Jurisdiction/Special Causes of Action," states that "[a]n attachment may be issued against any property or credit, matured or unmatured, which belong to a debtor." The circuit courts are the "court[s] of original general jurisdiction" in Maryland. *Brown v. State*, 409 Md. 1, 6 (2009) (quoting *Parker v. State*, 337 Md. 271, 287 n.11 (1995)); Md. Const. art. 4, §§ 1, 19, and 20; CJP § 1-501.

By contrast to the circuit courts (or any Maryland court), the Commission is not a court at all. It is an independent unit of state government created by the General Assembly in the exercise of its police power. *Solvuca v. Ryan & Reilly Co.*, 131 Md. 265, 284 (1917) (stating that by creating the Commission, "the Legislature never intended to constitute the Commission a Court, or to confer upon it the judicial power of the State within the meaning of the constitutional provisions [governing the creation of courts]"); LE § 9-301; *see also* COMAR, Title 14 "Independent Agencies," §§ 14.09 *et seq.*, Workers' Compensation Regulations. The Commission only has the powers conferred upon it by the Act. Extensive though they may be, they do not include judicial powers or

11

powers the legislature did not expressly grant. Because the Commission is not a court, any award it grants is not a judgment. *Mattare v. Cunningham*, 148 Md. 309, 314 (1925).

The Act permits parties to a claim before the Commission to enter into "an agreement for the final compromise and settlement of any current or future claim." LE § 9-722(a). Such an agreement must "contain the terms and conditions that the Commission considers proper[,]" LE section 9-722(b), and "may not take effect unless it has been approved by the Commission." LE § 9-722(c). The Commission has broad supervisory power to approve or disapprove settlements because that furthers the purpose of the Act, which is to protect injured workers. *B. Frank Joy Co. v. Isaac*, 333 Md. 628, 642–43 (1994). Indeed, once the parties to a claim have submitted a settlement agreement to the Commission for approval, a party may not unilaterally withdraw the settlement from consideration. *Id*. at 643–44. The circuit court has no power to approve or disapprove the settlement of a workers' compensation claim. *Cf. Altman v. Safeway*, 296 Md. 486, 490 (1983).

Conversely, the Commission's limited powers do not include the power to enforce an award it has granted. This was established long ago in *Mattare, supra,* in which the Court of Appeals was addressing whether a circuit court action by the beneficiary of a workers' compensation award that the decedent worker's employer failed to pay was barred by the statute of limitations. The Court noted that "[t]here is no provision in the Workmen's Compensation Law empowering the Commission to enforce its awards[.]" *Mattare*, 148 Md. at 314. Observing that the award was not a judgment, as it was not

12

issued by a court, the Court held that the award was a debt in the nature of a specialty, upon which the beneficiary had twelve years to bring suit in the circuit court. *See also Dyson v. Pen Mar Co.*, 195 Md. 107, 112 (1950) (same).

From the Act's inception in 1914, the Commission has had continuing jurisdiction and power over the cases that come before it, including the power to make modifications. In the original version of the Act, these powers were set forth at section 54, which in its entirety read as follows:

> The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or change with respect to former findings or orders with respect thereto as in its opinion may be justified.

That provision, with minor language changes, now appears at LE section 9-736(b). It states, as relevant:

> *Continuing powers and jurisdiction; modification.* – (1) The Commission has continuing powers and jurisdiction over each claim under this title.
> (2) Subject to paragraph (3) of this subsection [regarding time limitations], the Commission may modify any finding or order as the Commission considers justified.[7]

Given that this power and jurisdiction existed in 1925, when *Mattare* was decided, it is clear that the provision governing the Commission's continuing jurisdiction over its findings and orders has never embodied the power to enforce an award it has issued.

---

[7] Subsection (b) sets forth in part (3) time limitations in which the Commission may modify an award, except when there has been fraud or facts and circumstances amounting to an estoppel, in which case the time limits are established in subsection (c). Subsection (a) gives the Commission the power to readjust the rate of compensation in certain situations.

In *Dyson*, the Court of Appeals considered the effect of this provision in the context of a settlement agreement, not an award. The injured employee and his employer entered into a settlement of the employee's workers' compensation claim, with the payments to be made in installments. The Commission approved the settlement. After the employer made all the payments, the employee filed a motion before the Commission to set aside the settlement agreement on the ground that there had been a mutual mistake of fact about the extent of his injuries. The employer opposed the motion, in part on the ground that the Commission lacked the power to decide that issue. The Commission held a hearing and issued an order denying the motion, finding that the parties had not been operating under a mutual mistake of fact when the settlement was entered into. The employee filed an action for judicial review in the circuit court, which took evidence and made the same determination.

The employee appealed to the Court of Appeals, which considered the threshold question whether the Commission had the power to decide the mutual mistake of fact issue. The Court observed that a settlement of a workers' compensation claim, which must be approved by the Commission to be effective, is similar to an award by the Commission. *Dyson*, 195 Md. at 112 ("The filing and approval of a final settlement agreement has many of the aspects of an award."). For that reason, the Court analyzed the power and jurisdiction of the Commission post-settlement by application of what is now LE section 9-736(b). The Court noted that with respect to awards, it previously had held that the Commission could reopen a case, "even for reconsideration of a question

14

previously decided." *Id.* at 113 (discussing *Stevenson v. Hill,* 170 Md. 676 (1936), which held that the Commission had the power to reopen a case to decide whether the award it had granted had been computed based on an erroneous hourly wage for the decedent employee). Extending that reasoning to claims resolved by payments pursuant to settlement agreements, the Court explained:

> The underlying question as to the compensation to be paid for the injury, by agreement rather than by the determination of a contested issue, was presented and decided [by the Commission in approving the settlement agreement]. *The petition to reopen is not predicated upon a subsequent change of condition, but involves an inquiry into the justice of the approval in light of conditions existing at the time of the settlement.*

*Id.* at 114 (emphasis added). The Court concluded that the Commission had the power to reconsider whether its approval of the settlement of the employee's claim was just because, allegedly, there had been a mutual mistake of fact concerning the nature of his injury at the time of approval. (On the merits, the court upheld the decision against the employee.)

We return to the case at bar, which, in our view, differs significantly from *Dyson.* When Wilson filed his "Issues," he was not seeking to have the Commission reconsider its approval of the parties' settlement of his claim. Rather, he was seeking to have the Commission enforce the settlement agreement as approved. As he presented the issue, Chesapeake had failed to abide by the terms of the approved settlement agreement because it had not paid him his share. Unlike the employee in *Dyson* (or the employee's decedent in *Stevenson*), he was not complaining that the settlement amount (or award)

15

was not a fair monetary resolution of his claim, given the nature of his injury and his wage history. He simply wanted his share of the settlement money. There was nothing about its approval of the settlement agreement that the Commission was being asked to reconsider. Accordingly, the continuing jurisdiction of the Commission under LE section 9-736(b) was not implicated.

What *was* implicated by Wilson's "Issues," however, were powers outside the jurisdiction of the Commission to exercise. Just as the Commission does not have the power to enforce its awards, it does not have the power to enforce its approved settlement agreements, which, as the Court of Appeals has explained, are similar to awards. Even more important, the Commission does not have the power to decide whether settlement money in the hands of a workers' compensation insurer is exempt from garnishment for a judgment for child support. Only the circuit court has the jurisdiction to decide garnishment issues, and the precise issue could have and should have been raised by Wilson in the garnishment proceedings in the circuit court child support cases. What Wilson could not do was allow the garnishment proceedings to go forward, so that Chesapeake, as garnishee, had no option but to comply with the writs by paying his share of the settlement money to the Bureau, as judgment creditor, and then ask the Commission to order payment, thereby putting before it the exemption question that should have been raised in the garnishment proceedings. (Indeed, once the court in the garnishment proceedings entered judgments without the exemption issue having been raised, the issue was foreclosed.)

16

Subject matter jurisdiction may be raised at any time, by a party or by the Court. *Cty. Council of Prince George's Cty. v. Zimmer Development Co.*, 217 Md. App. 310, 319 (2014) (quoting *Cty. Council of Prince George's Cty. v. Dutcher*, 365 Md. 399, 405 (2001)). Whether the Commission had subject matter jurisdiction to decide the garnishment exemption issue the parties focus upon is a threshold matter. For the reasons given, the Commission lacked jurisdiction to decide that issue. On judicial review, the circuit court should have vacated the Commission's order for lack of subject matter jurisdiction. Accordingly, we shall reverse the judgment of the circuit court.

> **JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE ORDER OF THE WORKERS' COMPENSATION COMMISSION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEE.**